482 So.2d 491 (1986)
Lucy ANDERSON, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. BJ-285.
District Court of Appeal of Florida, First District.
January 21, 1986.
*493 Dale E. Rice, Crestview, for appellant.
Donna Harkness, Dist. Legal Counsel, Dept. of Health & Rehabilitative Services, Pensacola, for appellee.
ZEHMER, Judge.
On this appeal, we review the legality of a summary order issued by the Department of Health and Rehabilitative Services (HRS) requiring the emergency suspension of appellant Anderson's license to operate a child care facility regulated by sections 402.301-402.319, Florida Statutes (1985). The emergency order took effect immediately, causing appellant to cease operations and close the facility. Consequently, we have ordered this appeal expedited.
The authority for HRS to suspend appellant's license is found in sections 402.3055, 402.310, and 402.312. Authority to issue a summary order requiring emergency suspension of a license is contained in sections 120.60(8) and 120.54(9), Florida Statutes (1985). These latter provisions make "the agency's findings of immediate danger, necessity, and procedural fairness" judicially reviewable, and we have jurisdiction pursuant to section 120.68, Florida Statutes (1985). Commercial Consultants Corp. v. Department of Business Regulation, 363 So.2d 1162 (Fla. 1st DCA 1978).
The appealed order recites, in pertinent part:
1. Lucy Anderson operates Anderson's Child Care Center in her residence located at 407 Texas Avenue, Crestview, Florida. A family member residing with said Lucy Anderson at 407 Texas Avenue, Crestview, Florida, has been found to have engaged in conduct involving a preschool child left at Anderson's Child Care Center which resulted in a substantiated indicated report of child abuse within the meaning of Section 415.503, Florida Statutes. Said family member is still among the personnel of Anderson's Child Care Center and is allowed by Lucy Anderson to have unimpeded access to the preschool children left in the care of Anderson's Child Care Center. This situation *494 presents an imminent threat of serious danger to public health, safety and welfare and requires that License Number CCC 002 issued to Lucy Anderson for operation of Anderson's Child Care Center be suspended on an emergency basis effective October 21, 1985, and that formal proceedings to revoke this license be undertaken.
2. On this same date, an Administrative Complaint seeking to revoke the license of Lucy Anderson is being issued by this agency and is attached.
3. It is therefore ordered that License No. CCC 002 issued to Lucy Anderson for the operation of Anderson's Child Care Center is hereby immediately suspended and that formal proceedings in compliance with Section 120.60(7), Florida Statutes, shall be immediately instituted.
Although the "family member" is not otherwise identified in either the summary order or the formal complaint, the parties' briefs are in agreement that the person referred to is appellant's husband, Charles N. Anderson. The contemporaneously issued administrative complaint alleges that Anderson's Child Care Center is, in three respects, operating in violation of the minimum standards of a child care facility established in sections 402.301 through 402.319, Florida Statutes, and chapter 10M-12, Florida Administrative Code: (1) violation of the minimum standards with respect to employment of personnel having good moral character in that personnel of the facility includes a family member residing with the licensee "who has been found to have a substantiated indicated report of abuse, as defined in section 415.503, Florida Statutes, on record against him"; (2) violation of minimum standards with respect to discipline by subjecting children to forms of prohibited punishment; and (3) failure to maintain a proper ratio of personnel to children as required by the minimum statutory standards in that on or about October 9, 1985, the center, though licensed to care for fifty-five children, was found to be caring for at least sixty-five children with only four child care workers in attendance. The formal complaint further alleges that these violations constitute grounds for revocation of Anderson's license, notifies respondent of her right to an administrative hearing pursuant to section 120.57, Florida Statutes, and advises that failure to so request a hearing within thirty days will constitute an admission of the facts alleged.
The emergency suspension order is based solely on the first ground of the formal complaint and was issued before any hearing was held on the alleged violation. No evidentiary record was made showing the underlying facts upon which HRS relied in issuing the order. HRS has included, in an appendix to its brief, an affidavit made after issuance of the suspension order by one of its employees responsible for the licensing of child care facilities such as Anderson's. The affidavit recites that on October 22, 1985, at the request of Charles N. Anderson, affiant mailed to him "a copy of the Statewide Abuse Registry report in accordance with the provisions of section 415.15, Florida Statutes (Supp. 1984)," which is attached to the affidavit. The affidavit further recites that "the report enclosed with the letter identified the child involved in the incident, the nature of the harm to the child and time and place at which the incident occurred." The report attached to the affidavit indicates that approximately six and a half years ago, on June 4, 1979, Charles Anderson spanked a three-year-old boy with a rolled newspaper because he would not stay on the toilet and, as a result, caused a large bruise on the child's buttocks, that Anderson told the child's mother about the incident when she came to pick up her child, and apologized to her, explaining that "he had never had this type of thing happen as a result of using a rolled newspaper"; and that the incident was reported to HRS and the local police, and several days later the child's parents decided to seek a criminal complaint against Mr. Anderson. The report contains no information indicating that formal criminal or civil charges were actually prosecuted or that this incident was ever the subject of any type judicial determination.
*495 Anderson contends that the emergency order should be vacated and set aside for failure to meet the requirements of sections 120.60(8) and 120.54(9), Florida Statutes (1985), because it fails to show specific facts and reasons for finding an immediate danger to the public health, safety, and welfare, and, further, that it contains no facts or reasons from which to conclude that the procedure used, i.e., suspension of the license, is fair under the circumstances. Anderson contends that suspension of her license was not necessary to protect the public interests involved in that she should have been allowed to continue operating her thirteen-year-old business with her husband prohibited from having access to the children during operating hours. She further argues that the emergency suspension of her license created unnecessary chaos for the fifty to fifty-five children and working parents served by the facility, interrupted the income of her employees, and damaged the reputation of her business. She also argues that the suspension order violates the constitutional prohibitions against ex post facto laws and the impairment of contracts.
The only ground relied on by HRS to support issuance of the emergency order is the 1979 incident involving Anderson's husband. HRS contends that the abuse registry report constitutes a "substantiated indicated report of child abuse within the meaning of section 415.503" and that "this in itself would be enough to establish the critical fact of the potential for danger to vulnerable preschool children" since Charles Anderson is still "allowed unimpeded access to the preschool children" left at the facility (appellee's brief, p. 4). HRS explains that it chose not to identify Charles Anderson and the specific details of the incident involved on the face of the emergency order in order to "abide by the confidentiality provisions of section 415.51, Florida Statutes (Supp. 1984), to protect the rights of the victimized child and to further spare Anderson and her family any additional embarrassment that might be occasioned by needless publication of such details" (appellee's brief, p. 5). In any event, HRS argues, the licensee has suffered no prejudice by the absence of such details on the face of the order because she was well aware of the incident and the "family member" involved. Finally, HRS points out that it did not consider the less-drastic remedy of leaving the license in force and requiring the licensee to prevent her husband access to the children pending a final hearing of the charges because HRS did "not have sufficient staff to monitor the whereabouts of the family member in question on a daily basis to ensure compliance" (appellee's brief, p. 9).
We agree with Anderson's contention that the emergency suspension order is legally deficient and must be set aside for failure to comply with the applicable statutes. Since this order was issued without a hearing and supporting evidentiary record, we are required by chapter 120 to review the facial sufficiency of the order "without the benefit of a record establishing the facts underlying agency action and elucidating agency policies. Every element necessary to the order's validity must appear on its face." Commercial Consultants Corp. v. Department of Business Regulation, 363 So.2d 1162, 1164. Even if we could consider the facts detailed in the HRS affidavit, however, we would not, for the reasons hereafter discussed, be able to uphold the order.
The statutory authority for HRS to suspend Anderson's license has been substantially modified in the last two years. Prior to 1984, the operation of child care facilities was regulated by sections 402.301-402.316, Florida Statutes (1983). Section 402.301 set forth the legislative intent and declaration of purpose and policy to protect the health, safety, and well-being of the children of this state, to establish statewide minimum standards for the care and protection of children in child care facilities, and to ensure protection of children in child care facilities and encourage and assist in the improvement of child care programs. The statutory definition of "child care facility" in section 402.302(4) includes the facility operated by Anderson. The statute, as *496 it read in 1983, defined some minimum licensing standards and procedures for issuing licenses to such facilities. Chapter 402 likewise contained explicit authority for HRS to "deny or revoke a license or impose an administrative fine not to exceed $100 per violation, per day, for the violation of any provision of ss. 402.301-402.316 or rules adopted thereunder." § 402.310(1)(a), Fla. Stat. (1983). That section also provided that "when the Department has reasonable cause to believe that grounds for the denial or revocation of a license exist, it shall determine the matter in accordance with procedures prescribed in chapter 120." § 402.310(2), Fla. Stat. (1983). Except for these references to revocation in accordance with chapter 120, chapter 402 contained no explicit provisions for the emergency suspension of licenses by issuance of summary orders.
During a special session of the legislature in December 1984, chapter 402 was significantly amended by chapter 84-551, Laws of Florida. For example, section 402.301 was amended to make clear "the intent of the Legislature that all owners, operators, and child care personnel shall be of good moral character." Ch. 84-551, § 1 Laws of Fla. To that end, section 402.305, containing minimum licensing standards, was amended to require that minimum standards for child care personnel, including any family member of "a child care facility operator," shall include requirements as to good moral character, based upon screening and background checks. Ch. 84-551, § 3, Laws of Fla. Section 403.310 was amended to authorize temporary "suspension," as well as permanent revocation, of a license in accordance with procedures prescribed in chapter 120. Ch. 84-551, § 9, Laws of Fla.
During the 1985 regular session, the legislature again considered the broad subject of child abuse in Florida. In chapter 85-54, Laws of Florida, the legislature made extensive changes to several chapters in Florida Statutes dealing with various aspects of child abuse, including chapter 402 regulating child care facilities. Section 402.302(8), defining "child care personnel," was completely rewritten to provide in pertinent part:
"Child care personnel" means all owners, operators, employees, and volunteers working in a child care facility. The term does not include persons who work in a child care facility after hours when children are not present or parents of children in Head Start. For purposes of screening, the term includes any member, over the age of 12 years, of a child care facility operator's family, or person, over the age of 12 years, residing with a child care facility operator if the child care facility is located in or adjacent to the home of the operator or if the family member of, or person residing with, the child care facility operator has any direct contact with the children in the facility during its hours of operation. Members of the operator's family, or persons residing with the operator, who are between the ages of 12 years and 18 years shall not be required to be fingerprinted, but shall be screened for delinquency records.
Ch. 85-54, § 23, Laws of Fla. A new subsection 402.302(10) was added by section 23 to define "screening" as follows:
"Screening" means the act of assessing the background of child care personnel and includes, but is not limited to, employment history checks, checks of references, local criminal records checks through local law enforcement agencies, fingerprinting for all purposes and checks in this subsection, statewide criminal records checks through the Department of Law Enforcement, federal criminal records checks through the Federal Bureau of Investigation, and abuse registry clearance.
Section 402.305(1), setting forth minimum standards for child care personnel, was substantially amended in section 24 by adding subparagraph (a), which now states, in part:
Good moral character based upon screening. Such minimum standards for screening shall ensure that no child care *497 personnel at a child care facility or other child care program have been found guilty of, regardless of adjudication, or entered a plea of nolo contendere or guilty to, any felony prohibited under any of the following provisions of the Florida Statutes or under similar statutes of other jurisdictions.
The subsection then lists twenty-six specific felony offenses in Florida Statutes, including section 827.04, "relating to child abuse," and concludes with the following provision:
For purposes of this subsection, a finding of delinquency or a plea of nolo contendere or other plea amounting to an admission of guilt to a petition alleging delinquency pursuant to part II, chapter 39, or similar statutes of other jurisdictions, for any of the foregoing acts, has the same effect as a finding of guilt, regardless of adjudication or disposition. Such standards for screening shall also ensure that the person has not been judicially determined to have committed abuse against a child as defined in s. 39.01(2) and (7) or to have a substantiated indicated report of abuse as defined in s. 415.503 or to have committed an act which constitutes domestic violence as defined in s. 741.30. For misdemeanors prohibited under any of the foregoing Florida Statutes or under similar statutes of other jurisdictions or for judicial determinations of abuse, substantited indicated reports of abuse, or commissions of domestic violence used for disqualification of a person from working with children, the department or local licensing agency may grant an exemption from such a disqualification if the department or local licensing agency has clear and convincing evidence to support a reasonable belief that the person is of good character as to justify an exemption. The person shall bear the burden of setting forth sufficient evidence of rehabilitation, including, but not limited to, the circumstances surrounding the incident, the time period that has elapsed since the incident, the nature of the harm occasioned to the victim, and the history of the person since the incident, or such other circumstances that shall by the aforementioned standards indicate that the person will not present a danger to the safety or well-being of children. The decision of the department or local licensing agency regarding an exemption may be contested through the hearing procedures set forth in s. 402.3055. [Emphasis added.]
Ch. 85-54, § 24, Laws of Fla.
New subsection (8) was added to section 401.305 to impose specific limitations on child discipline, and reads in part:
CHILD DISCIPLINE.  Minimum standards for child discipline practices to ensure that age-appropriate, constructive, disciplinary practices are used for children in care. Such standards shall include at least the following requirements:
(a) Children shall not be subjected to discipline which is severe, humiliating or frightening.
(b) Discipline shall not be associated with food, rest or toileting.
(c) Spanking or any other form of physical punishment is prohibited.
Id.[1]
Section 402.3055, although newly created by chapter 84-551, was completely rewritten in section 25, chapter 85-54, and contains extensive provisions relating to submission and processing of fingerprints and criminal checks of child care personnel. It explicitly authorizes HRS, in subsection 402.3055(5), to deny, suspend, or revoke a license or to pursue other remedies provided in sections 402.310, 402.312, or 402.319, in addition to or in lieu of denial, suspension, or revocation for failure to comply with this section. Subsection (5)(a) mandates that:
The disciplinary actions determination to be made by the department ... and the procedure for hearing for applicants and *498 licensees shall be in accordance with s. 402.310.
Subsection 402.3055(5)(b) provides for written notice to the licensee of noncompliance with the standards in section 402.305(1)(a). Subsection (5)(c) requires, when HRS "is the agency initiating the statement regarding noncompliance," that the licensee and affected child care personnel shall be accorded a hearing under chapter 120 to present evidence relating either to the accuracy of the basis of exclusion or to the denial of an exemption from disqualification under subsection (5)(a). Subsection (5)(d) requires HRS to "provide for procedures for contesting the accuracy of the records used as the basis of expulsion for those employees not covered by paragraph (c)." Subsection (5)(h) mandates that:
Refusal on the part of an applicant or licensee to dismiss child care personnel who have been found to be in noncompliance with personnel standards of s. 402.305(1)(a) shall result in automatic denial or revocation of the license in addition to any other remedies pursued by the department or local licensing agency.
Ch. 85-54, § 25, Laws of Fla.
It is readily apparent that the amendments to chapter 402 make careful screening of child care personnel and family members of a home facility operator licensee an essential element of the state's endeavors to protect children from abuse through regulation of child care facilities. If the screening reveals that an employee or family member has pleaded nolo contendere or guilty to, or has been found guilty of, any statutory felonies described in section 402.305(1)(a), that person is conclusively deemed unfit to act as child care personnel and is automatically disqualified from such employment.
On the other hand, persons who are not disqualified by reason of having pled to or been convicted of a specified felony, but who have committed a specific misdemeanor or have been judicially determined to have committed child abuse as defined in section 39.01, or to have a substantiated indicated report of abuse as defined in section 415.503,[2] or to have committed an act which constitutes domestic violence as defined in section 741.30, are presumed unqualified as child care personnel and may overcome that presumption by showing HRS clear and convincing evidence of good character or rehabilitation. To this extent, the statute distinguishes between persons deemed conclusively disqualified and persons presumptively disqualified. The evident statutory scheme we discern from the statutory language and changes in the law over the past two years is to conclusively or presumptively disqualify persons only when the disqualifying incidents have been properly tested in an appropriate judicial proceeding.[3] For this reason, we attach considerable significance to the qualifying phrase "judicially determined" in section 402.305(1)(a) because, lacking such determination, HRS is not authorized to disqualify a person for past acts of prohibited conduct until an *499 appropriate hearing, after notice, has been held under chapter 120.
Turning to the emergency suspension order under review, we find no recitation that the alleged "substantiated indicated report of abuse" was ever judicially determined as required by section 402.305(1)(a), Florida Statutes (1985). Since "substantiated indicated reports of abuse" do not automatically render a person unfit unless shown to have been judicially determined, the order is facially insufficient to establish that Anderson's husband is disqualified and his presence at the facility violates the statute.
The power of HRS to issue an emergency order suspending appellant's license must be exercised in strict compliance with sections 120.60(8) and 120.54(9), Florida Statutes (1985). See sections 402.3055 and 402.310, Florida Statutes (1985). Section 120.60(8) states that if the agency "finds that immediate serious danger to the public health, safety, or welfare" requires emergency suspension of a license, it "shall show compliance in its order with the requirements imposed by s. 120.54(9) on agencies making emergency rules." Section 120.54(9)(a) requires the agency to follow a procedure "which is fair under the circumstances and necessary to protect the public interest, provided that":
1. The procedure provides at least the protection given by other statutes, the Florida Constitution, or the United States Constitution.
2. The agency takes only that action necessary to protect the public interest under the emergency procedure.
3. The agency publishes in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances.
These sections, as applied to the issuance of emergency orders suspending licenses, require specific findings of fact to support summary agency action. Because the agency is allowed to act before it accords basic due process rights to the parties, "the agency's statement of reasons for acting `must be factually explicit and persuasive concerning the existence of a genuine emergency.'" Commercial Consultants Corp. v. Department of Business Regulation, 363 So.2d 1162, 1165 (Fla. 1st DCA 1978).
Tested by these statutory requirements, we find that the order is insufficient to show that the incidents relied on by HRS would result in immediate serious danger to the public if the license were not immediately suspended and the child care facility closed.
First, the order fails to facially identify either the specific incident of child abuse relied on or the particular family member involved. An order cannot be factually explicit, as required by statute, while using vague references to an unspecified child abuse incident by an unidentified family member. This order did not even identify the year in which the incident occurred. The explanation by HRS that it omitted this essential information because of the confidentiality requirements of section 415.51, Florida Statutes (1985), and to spare Mrs. Anderson and her husband additional embarrassment, while it may have been well-intentioned, does not excuse this deficiency. Section 415.51(1) makes "all records concerning reports of child abuse or neglect" confidential and exempt from the public records disclosure requirements in section 119.07(1). The specific incident of abuse could have been adequately identified by HRS through reference to date, place, circumstances of the incident, and family member by name. When it is necessary to identify a particular child, that may be accomplished by reference to the child's initials (as is done in court proceedings to comply with the confidentiality requirements in sections 39.411 and 39.413, Florida Statutes (1985), relating to juvenile dependency proceedings). We find nothing in section 415.51 that would prevent this identification. The notion that the family member's name should be omitted to avoid embarrassment *500 to appellee and her family is meaningless because suspension of the license and closing of the facility, as well as the alleged reasons therefor, necessarily became public knowledge. Nothing in the order supports the contention by HRS that appellant was well aware of the incident and family member involved, nor is there reference to a prior communication to the licensee concerning disqualification of a member of her family by reason of a report of child abuse.
Second, the order contains no explicit facts to show that the unnamed family member poses any immediate danger to the children at the facility. HRS argues that the information in the abuse registry reports showing a substantiated indicated report of child abuse by a family member having unimpeded access to the children is, alone, sufficient to support the issuance of an emergency order, but this fact does not satisfy the statutory requirements. As previously discussed, the absence of a judicial determination regarding the report of child abuse leaves that report legally insufficient to raise a presumption of disqualification. Yet even if the requisite facts showing automatic disqualification under section 402.305 had been sufficiently stated on the face of the order, chapter 120 further requires a statement of explicit facts that show immediate harm will likely occur unless the proposed action is taken without affording notice and hearing to the license holder. Assuming, as indicated by the affidavit in HRS's appendix, that Anderson's husband had once spanked a child during toilet training some six and a half years before, that the incident was reported as a case of child abuse, but not prosecuted, that this amounted to a substantiated indicated report of abuse, and that Anderson's husband thereafter continued to care for children in the facility to the present day without further incident or accusation of abuse, we do not find these facts sufficient to show an immediate serious danger to public health. Absent additional facts in the order showing a likelihood of immediate harm to the children, we find the order insufficient to comply with sections 120.60(8) and 120.54(9).
Third, we do not find that the circumstances recited in the order required the immediate closing of appellant's facility instead of some lesser and fairer alternative. Section 120.54(9)(a)2 requires that an agency take "only that action necessary to protect the public interest." Appellant offered to prevent access by her husband to children at the facility during the hours it was open, and nothing appears in the order that would indicate such could not have been done pending hearing and disposition of the formal complaint against appellant. Had HRS so ordered, and thereafter learned that appellant had failed to comply with its order because her husband was found at the facility with the children, HRS would then have statutory grounds for automatic revocation of appellant's license. § 402.3055(5)(h), Fla. Stat. (1985). The reason advanced by HRS in its brief, i.e., that it did not have sufficient personnel to monitor the whereabouts of appellant's husband on a daily basis, is not shown by the order to be sufficient to bypass this less-drastic and fairer remedy. There is no showing of any facts to suggest that appellant or her husband would have disobeyed such an order once it was issued by HRS. Cf. Saviak v. Gunter, 375 So.2d 1080 (Fla. 1st DCA 1979).
For the foregoing reasons, the emergency order suspending appellant's license is vacated and set aside. In view of this disposition, we find it unnecessary to consider appellant's ex post facto and impairment-of-contract arguments.
Pursuant to rule 9.340, Florida Rules of Appellate Procedure, the clerk is directed to issue mandate with the release of this opinion.
THOMPSON and BARFIELD, JJ., concur.
NOTES
[1] There was no such statutory prohibition of spanking and discipline associated with toileting in 1979, when the incident involving appellant's husband took place.
[2] The phrase "substantiated indicated report of abuse" is not defined in chapter 402. Section 415.503, Florida Statutes (1985), defines the terms "child abuse" and "indicated report," and the latter term "means a report made pursuant to s. 415.504 when a child protective investigation determines that some indication of abuse or neglect exists." The term "substantiated," as used in section 402.305(1)(a), is not defined by statute or rule. The appendix to appellee's brief contains an excerpt from HRS Manual 210-1B that contains instructions to HRS employees for handling indicated reports of abuse, and defines "substantiated" to mean that "you have established by proof or credible evidence that abuse or neglect occurred." This definition suggests that to be "substantiated," an indicated report must be corroborated by evidence other than the existence of the report itself. Since this manual is not a rule in the Florida Administrative Code, it cannot be judicially noticed on appeal. For this reason, we give no approval to this definition of "substantiated" at this time. In any event, even if the report had been substantiated in this sense through investigation by an HRS employee, this cannot legally satisfy the statutory requirement that such report also have been subjected to judicial determination.
[3] Whether a quasi-judicial determination in an administrative proceeding would be sufficient to meet this statutory requirement is not before us, and we venture no opinion on that question at this time.