473 So.2d 209 (1985)
CIANBRO Corporation, Williams Brothers Construction Company, Inc., and Republic Contracting Corporation, As Joint Venturers, Petitioners,
v.
Jacksonville Transportation Authority, Florida Department of Transportation, John Lanahan, As Chairman of the Board of the Jacksonville Transportation Authority, and Individually, Respondents.
al Johnson Construction Company, a Delaware Corporation, Petitioner,
v.
State of Florida, Jacksonville Transportation Authority, and John F. Lanahan, Individually and As Chairman of the Jacksonville Transportation Authority, Respondents.
Nos. BF-39, BF-40.
District Court of Appeal of Florida, First District.
July 3, 1985.
*210 Robert P. Smith, Jr. of Hopping, Boyd, Green & Sams, Tallahassee, representing McCarthy Bros. Co. and Huarte Y Cia, S.A., a joint venture, for respondents.
William E. Williams of Fuller & Johnson, Tallahassee, for Al Johnson Const. Co.; and J. Marshall Conrad and Kenneth R. Hart of Ausley, McMullen, McGehee, Carruthers & Proctor, Tallahassee, for Cianbro Corp., Williams Bros. Const. Co., Inc., and Republic Contracting Corp., petitioners.
Robert C. Gobelman, James E. Cobb, Herbert R. Tanning and Jack W. Shaw, Jr. of Matthews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for Jacksonville Transp. Authority and John F. Lanahan, respondents.
PER CURIAM.
These consolidated cases come before us on Petition for Review of Non-Final Administrative Action, Petition for Writ of Mandamus, and Petition for Writ of Prohibition. This controversy arises from the bid solicitation and contract award processes conducted by respondent Jacksonville Transit Authority (JTA, Authority) in an effort to award contracts for the construction of a bridge and bridge approaches over the St. Johns River in Duval County, in connection with the "Dame Point Expressway Project." The instant proceeding was the subject of a memorandum opinion reported at 473 So.2d 206 (Fla. 1st DCA 1985), which stated that an opinion more fully outlining the facts and issues, and explaining the rationale for our decision would be issued at a later date. That opinion follows:
In July 1984, the JTA issued an invitation for competitive bids for four contracts to construct bridge approaches and a crossing over the St. Johns River in Duval County. The project was bid under four separate contracts, designated 3, 4s, 4n, and 5, with the contract or combination of contracts to be awarded to the lowest responsible bidder or combination of bidders. The bid document allowed the bidders to submit proposals based on their own alternate designs, as well as the base design prepared by JTA. The alternate designs were submitted to a review panel which evaluated the designs and either approved the designs, rejected the design, or approved the design subject to certain conditions being met. The lowest bid combination was that of petitioner Cianbro's alternate designs 3, 4s and 4n, and Pensacola/Tyger's bid for base contract 5. The second lowest combination was the bid of petitioner Cianbro for alternate designs 3, 4s and 4n, and petitioner Al Johnson's alternate design 5. The petitioners' bids were rejected for asserted deficiencies in design or construction materials. Similarly, the next four bid combinations were rejected by the reviewing group.
Apparently, the decision to award the contracts to the seventh lowest bid combination was reached by the Authority on December 20, 1984. On December 23, 1984, Cianbro filed a notice of protest, despite the failure of the Authority to issue a formal notice to bidders of intent to award the contracts as required by Section 120.53(5), Florida Statutes (1983). Petitioner Al Johnson filed a notice of protest on January 29, 1984, prior to any formal notice *211 of intent to award contract being issued as required.
On February 13, 1985, JTA held an informal conference with Johnson on its protest to the contract award, consistent with Section 120.53(5)(d). The pleadings before us do not reveal if such a conference was ever held between representatives of Cianbro and JTA. No formal notice of intent to award contracts was entered until February 14, 1985, nearly two months after the decision to award the contracts had been made. On the issuance of the formal notice, petitioners promptly filed amended notices of protest and amended petitions for formal hearings pursuant to Section 120.57(1). At the same time JTA issued the notice of intent to award contracts, it also issued a document entitled "Notice Regarding Contract Award Process"[1] which asserted that there would be an immediate danger to the public health, safety or welfare if the contract award process were stayed pending resolution of the bid protest. On February 22, 1985, petitioners filed with this court a Petition for Review of Non-Final or Intermediate Agency Action, Writ of Prohibition and/or Writ of Mandamus (BF-39) and Petition for Review of Non-Final Agency Action (BF-40). These proceedings were consolidated for oral argument.
Petitioners assert a variety of errors including: The failure of JTA to adopt rules specifying the procedure for resolution of protests arising from the contract bidding process, see Section 120.53(5), Florida Statutes; the failure of JTA to comply with the Sunshine and Public Records laws, see Chapters 119 and 286, Florida Statutes; the failure of JTA to refer the petitioners' protests to the Division of Administrative Hearings; the "Notice Regarding Contract Award Process" does not state with sufficient particularity those facts and circumstances showing an immediate danger to the public health, safety or welfare; and that the "notice" is deficient because not signed by an agency head as defined by Section 394.011, Florida Statutes. In addition to the Petition for Review of Non-Final Agency Action, petitioners also sought a writ of mandamus to require JTA to refer the bid protest to the Division of Administrative Hearings[2] and petitioned for a writ of prohibition to estop JTA from awarding the subject contracts. We find it necessary only to determine whether the "Notice Regarding Contract Award Process" entered pursuant to Section 120.53(5)(c), Florida Statutes, set forth sufficient facts and circumstances to show that there would exist an immediate danger to the public health, safety, or welfare, if the contract award process were stayed pending resolution of administrative proceedings.
Section 120.53(5), Florida Statutes, governs the procedure for the bidding and awarding of contracts entered into by JTA. Section 120.53(5)(b) provides that any person adversely affected by the agency's decision or intended decision may file a notice of protest within 72 hours and a formal written protest within ten days of filing the notice of protest. Section 120.53(5)(c) provides:
Upon receipt of a notice of protest which has been timely filed, the agency shall stop the bid solicitation process or the contract award process until the subject of the protest is resolved by final agency action, unless the agency head sets forth in writing particular facts and circumstances which require the continuance of the bid solicitation process or the contract award process without delay in order to avoid an immediate and serious danger to the public health, safety, or welfare.
Section 120.53(5)(d) provides for an informal conference at the request of a protestor or on the agency's own initiative. If the protest is not resolved by this conference, the agency is to refer the matter to the Division of Administrative Hearings for *212 proceedings under Section 120.57(2) if there are no disputed material facts, see Section 120.53(5)(d)(1), or for Section 120.57(1) proceedings if there are disputed issues of material facts, see Section 120.53(5)(d)(2).
The legislature has provided a comprehensive scheme for resolving protests arising from the contract bidding process. This scheme envisions that all contract awards will be stayed until the protest is resolved. There are several reasons for staying the contract award process, including: preventing the agency from wrongly awarding the contract; resolving disputes over the contract award before construction is undertaken; preserving the rights of the protesting parties; preserving the public treasury by insuring that the contract is awarded to the lowest responsible bidder; and generally, to provide for orderly resolution of bid and contract award protests. We find another compelling reason for such a stay present in the instant case. The bids of the protestors and the incipient successful bidder are based on alternative designs, as well as the base design promulgated by JTA. Should the disappointed bidders eventually succeed in their challenge to the contract award, in the absence of the statutory stay there is no assurance that the design of the protesting bidder would be compatible with the design of the incipient successful bidder. In other words, there is no guarantee that, if petitioners were successful in this challenge, they would be able to take over an ongoing project and complete the construction. In short, we find the statutory scheme set out for resolution of bid and contract award protests, including the statutory stay on the filing of a protest, to provide for orderly and considered resolution of protest while safeguarding the rights of both the disappointed and incipiently successful bidder. Given the above, we determine that this scheme should be upset in only the most compelling circumstances.
We now consider whether the "Notice Regarding Contract Award Process" sets forth facts sufficient to require the contract award process to continue without delay to avoid an immediate danger to the public health, safety or welfare. Such an order, entered pursuant to Section 120.53(5)(c) is analogous to the statement required in promulgating an emergency rule under Section 120.54(9)(a)(3), Florida Statutes, and an immediate final order under Section 120.59(3), Florida Statutes. In Commercial Consultants Corp. v. Department of Business Regulation, 363 So.2d 1162 (Fla. 1st DCA 1978), we found that these provisions requiring an agency to "recite with particularity" or to publish "the specific facts and reasons" demonstrating an immediate danger to the public health, safety or welfare, contemplate a consistent standard to be applied to all summary agency action. 363 So.2d at 1164.
The first of the reasons cited by JTA as grounds for finding an immediate danger to the public health, safety or welfare if the contract process is not continued, is that the bridge permit issued by the United States Coast Guard (Bridge Permit 90-79) provides:
The approval hereby granted shall cease and be null and void unless construction of the bridge is commenced within five years and completed within nine years after the date of this permit.
This permit was issued on July 11, 1979. Construction did not begin until June 25, 1984. The "notice" goes on to state that the construction schedule for the contracts in question will run a minimum of 37 months plus three months for unforeseen delays. The agency asserts that delaying the award of contracts will "seriously jeopardize" the agency's ability to complete construction within the deadline. The notice fails to explain why the contracts for the project were not bid until five years had lapsed since the issuance of the permit. This court has earlier pointed out that: "... [An] emergency created wholly by an agency's failure to take timely action cannot justify extraordinary suspensions or extensions of the statutory schedule. That principle binds the state in its most fundamental functions... ." Postal Colony *213 Company, Inc. v. Askew, 348 So.2d 338, 342 (Fla. 1st DCA 1977). See also, Lets Help Florida v. Smathers, 360 So.2d 496, 497 (Fla. 1st DCA 1978) ("... an avoidable administrative failure ... does not justify the adoption of an emergency rule... .")
JTA does not dispute petitioners' assertion that under 33 C.F.R. Section 114.45, an extension of the Coast Guard bridge permit may be obtained. Indeed, the Authority states only that "such an extension would likely be premature at this point," and that "any such extension request would likely result in extended administrative hearings and, perhaps, additional litigation...." Just as delay alone is not sufficient to show an emergency, the possibility of having to undergo further administrative hearings or additional litigation (if an extension should prove necessary) does not demonstrate facts and circumstances giving rise to an immediate danger to the public health, safety or welfare.
The "Notice" goes on to state:
The public would be subjected to deprivation of a badly needed crossing over the St. Johns River and the expressway system would be severely impaired. The additional cost to the public as a result of the delay would be tremendous. The public welfare would be seriously and immediately endangered.
Section 120.53(5)(c) requires that the agency state those "particular facts and circumstances" which show that a continuation of the contract award process is necessary to protect the public health, safety, or welfare. The above-quoted passage sets forth no particular facts and circumstances, but only conclusory, self-serving allegations by JTA. As this court has earlier pointed out:
If we accepted the general, conclusory prediction of harm quoted above as sufficient justification for summary agency action, the legislature's provision for notice and a hearing before a cease and desist order may issue could be avoided in every case. We cannot approve such result. To satisfy the statute, the ... order must allege facts showing that specific incidents of irreparable harm to the public interest will occur without an immediate cease and desist order.
363 So.2d at 1164.
The second rationale advanced as constituting an immediate danger sufficient to override the statutory stay is that the JTA must,
... agree to expend not less than eighty-five percent (85%) of the proceeds of the one hundred and forty million dollars of bonds to be issued to finance the construction of the Dame Point Bridge and other projects (or one hundred nineteen million dollars) within three (3) years of the date or their issuance in order for such bonds to be tax-free bonds pursuant to the provisions of the Internal Revenue Code and applicable regulations thereunder.
The notice alleges that unless the contract award process is continued the ability of JTA to spend these funds will be endangered, thereby threatening the public welfare by increasing the cost of the construction.
We find this statement fails to set forth any facts or circumstances which demonstrate an immediate and serious danger to the public interest. The "applicable rules and regulations" would require only that JTA "agree to expend" eighty-five percent (85%) of the bond issue for it to retain tax-free status. It was represented to the court at oral argument that all parties are in agreement that an expedited administrative hearing would be provided. It would be sheer speculation on the part of the Authority or this court to assume that it would take such an amount of time to conclude administrative hearings, so as to seriously endanger the ability of the Authority to agree to expend these funds and retain their tax-free status.
The only other fact or circumstance advanced by JTA as constituting a serious and immediate danger to the public interest is that the bidding specifications *214 contain a clause which deem all bids rejected unless the contract is awarded within 120 days of the opening of the bids. JTA argues that if this self-imposed deadline is not met, the contracts would have to be rebid with the accompanying cost and delay. We have serious reservations as to the propriety of this provision. Initially, we question whether, by setting a deadline of 120 days for award of contracts, JTA can avoid a contract award protest and simply rebid the project. This "escape clause" may not be utilized to circumvent the procedures set forth in Section 120.53, governing bid protests. If that were the case, the agency could simply avoid a bid or contract protest by setting an arbitrary date on which all bids not awarded would be deemed rejected. In Solar Energy Control, Inc. v. State of Florida, Department of Health and Rehabilitative Services, 377 So.2d 746 (Fla. 1st DCA 1979), we intimated that an agency could not use its supposed power to "reject any and all bids" as a device to avoid bid protest proceedings and cut off a bidder's right to an administrative remedy. Regardless of the propriety of the 120 day clause in the instant case, we find that it does not demonstrate a fact or circumstance which would threaten the public health, safety or welfare.
For the above-stated reasons, we find that the "Notice Regarding Contract Award Process" does not state with sufficient particularity facts which evidence a serious and immediate danger to the public health, safety or welfare, such that the contract award process must be continued. The "Notice Regarding Contract Award Process" finding an immediate and serious danger to the public, health, safety, or welfare is quashed and the statutory stay shall remain in effect pending resolution of bid protest proceedings. Remanded for further proceedings consistent with this opinion.
ERVIN, SMITH and WIGGINTON, JJ., concur.
NOTES
[1] See Memorandum Opinion for the full text of the "Notice Regarding Contract Award Process."
[2] As JTA has agreed that this matter should be referred to the Department of Administrative Hearings, we find that consideration of the Petition for Writ of Mandamus is not necessary.