BOOTH, Judge,
concurring in part and dissenting in part.
I agree with the majority that the Department “is subject to sharp criticism.” Something more is needed, however, in view of the agency’s asserted right to avoid the statutory procedures for resolution of bidding controversies. I cannot agree that the agency has the option of either following the statute (stay and prompt hearing of bid protest) or of rejecting all bids, rendering the bid protest moot. Section 120.-53(5)(c), Florida Statutes, provides:
(c) Upon receipt of a notice of protest which has been timely filed, the agency shall stop the bid solicitation process or the contract award process until the subject of the protest is resolved by final agency action,_ [emphasis added]
The statute makes specific exceptions for emergency situations[1] but does not provide that the rejection of all bids, after the filing of a protest, will operate to “bypass” the statutory requirements.
The Department’s noncompliance with the statute has apparently succeeded in this case by mooting the protest and allowing the extension of previously held contracts rather than award to appellants of the contracts sought. Appellant, despite its meritorious bid protest and compliance with statutory procedures, has gained nothing for its time and expense. Since the grounds asserted in appellant’s protest were the basis for the Department’s rejection of all bids, and in view of the Department’s failing to follow procedures, appellant should be awarded fees and costs.[2]
*340 The Department’s failure to timely forward either of appellant’s protests for hearing, as required by law, delayed the proceedings irretrievably. This is exactly the result the Legislature sought to prevent when it provided for speedy referral and hearing of protests. I disagree with the majority that appellant should have sought mandamus or other extraordinary judicial remedy. Given that the court would issue a show cause order allowing time to file a response, this avenue would not necessarily save significant time. More fundamentally, it is asking too much of a litigant to anticipate, at the time an agency first exceeds a statutory time limit, that the delay will continue long enough to make a mandamus petition worthwhile. An agency’s intentions are not always apparent until clarified by hindsight. Requiring immediate recourse to a higher authority or later forfeiture of statutory rights is neither practical nor wise where the parties are still seriously negotiating, and by the time an impasse is reached, the damage may be done. The best solution is to require strict adherence to statutory procedures and time limits for bid dispute resolution.
The Department was not entitled to ignore the statute and spend two months trying to persuade appellant to withdraw its protest. However, reversal and remand for further proceedings will serve no useful purpose in this case. The term contract at issue has expired,[3] and there is nothing left to award. Further, there is competent evidence supporting the hearing officer’s determination that the Department did have grounds for rejecting all bids. Appellant’s protests revealed the grounds now relied on by the Department to justify rejection of all bids.
Although I must concur in the affirmance of the Department’s rejection of all bids, I dissent from the majority’s holding that the power to reject all bids can be used as it was in this case. The plain language of Section 120.53 is that the filing of a bid protest stops the solicitation and award process. This is an automatic stay that remains in effect until the dispute is resolved. The exception for emergency is stated, but no other. Bid rejection is part of the bidding process and cannot be used to override the statutory procedures.[4]
The Department’s position, adopted by the majority, will, I believe, effectively eliminate the bid protest resolution procedures of Chapter 120. Without the restraints of Section 120.53, the power to reject all bids is limited only by the requirement that it not be exercised in an arbitrary or capricious manner. Virtually any flaw in the bidding procedure can justify bid rejection under that standard. Ironically, the defect which the agency “discovers” is a basis for rejection may be the very defect that formed the basis of the protest. The protestant, despite the merit of the protest and a low bid, loses without any recourse, since the agency can avoid dealing with the protest by rejecting all bids. Once bids are opened and then rejected, a favored bidder(s) is given a chance to resubmit a low bid, and the original low bidder loses its advantage as well as the time and preparation costs for that bid.[5] The power to reject all bids, and the threat of the use of that power, are potent weapons that can be misused to eliminate the fair, open competitive bidding procedures. I am concerned that bid rejection was improperly used here without concern for the rights of the protestant, rights which should have been protected by the mandatory stay. I am also concerned that these procedures will set an unfortunate precedent for the future and encourage the *341 flaunting of statutory safeguards imposed for the public’s good.

. The Department did not make any findings of an “immediate serious danger to public health, safety, or welfare,” so that exception to the statutory rule is not an issue in this case.

. Cianbro Corporation v. Jacksonville Transportation Authority, 473 So.2d 209, 214 (Fla. 1st DCA 1985).

. Wood-Hopkins Contracting Company v. Roger J. Au & Son, Inc., 354 So.2d 446, 450 (Fla. 1st DCA 1978).