936 So.2d 1174 (2006)
OAKCREST EARLY EDUCATION CENTER, INC., et al., Appellants
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D05-2202.
District Court of Appeal of Florida, Fifth District.
August 25, 2006.
*1175 Edward L. Scott, of Edward L. Scott, P.A., Ocala, for Appellant.
Ralph J. McMurphy, Department of Children and Families, Wildwood, for Appellee.
SAWAYA, J.
Although much has been said about the broad and abstract provisions of the Due Process Clauses of our state and federal constitutions, we are certain that, at a minimum, they require that deprivation of life, liberty, or property must be preceded by adequate notice and an opportunity for a full and fair hearing appropriate to the cause of action being adjudicated.[1] Due process principles are an essential and fundamental ingredient of our constitutional jurisprudence and they form the basis from which many laws derive their authority. One of these is section 120.60(6)(c), Florida Statutes (2005), which allows summary suspension of a license, such as the child day care facility license held by Oakcrest Early Education Center, Inc.[2] This statute requires that in cases of summary suspension, the Department of Children and Families must promptly institute formal suspension or revocation proceedings pursuant to sections 120.569 and 120.57, Florida Statutes. We are called upon to determine whether Oakcrest's due process rights under this statute were violated when the Department summarily suspended its license. If so, the Emergency Final Order of Suspension we now review must be reversed, just as Oakcrest contends.[3]
When the Department conducted an inspection on April 27, 2005, to determine *1176 whether Oakcrest's one-year license to operate a child day care facility would be renewed, Oakcrest was orally advised by the inspectors that it was in compliance and that its license, which was set to expire by operation of law on June 13, 2005, would be reissued for another year. Unfortunately, during a torrid afternoon on June 7, a child in the care of Oakcrest was inadvertently left inside a van for approximately two-and-a-half hours. When the child was subsequently discovered, he was dehydrated and in distress. The child was delivered to a hospital in serious condition where he received care for a period of time. Oakcrest notes that the child recovered and was subsequently released.
The Department notified Oakcrest on June 8, through a document entitled Notice of Denial of an Application to Operate a Child Care Facility, that its application to renew its license was denied based upon the incident that had occurred the preceding day, the failure to properly document the arrival and departure of children, inadequate record keeping, and the history of the facility's failure to abide by statutory and code requirements. On June 9, the Department served a copy of the Emergency Order on Oakcrest, notifying it that its license was suspended effective 5:00 p.m. on June 8. This is the order we now review. But for the incident on June 7, it appears that Oakcrest's license would have been renewed. Because of the timing of the suspension vis-à-vis the license expiration date, the suspension affected three business days before the license expired by operation of law.
Oakcrest filed an appeal of the Emergency Order and, in addition, mounted a challenge to the Department's refusal to reissue its license. On June 16, 2005, Oakcrest filed its Petition for Administrative Hearing addressing the Notice of Denial of Application to Operate a Child Care Facility. In it, Oakcrest denied that it had committed any child abuse, neglect, or abandonment. Oakcrest challenged the Department's decision to summarily suspend its license, which it labeled as "harsh and unwarranted." In its brief, Oakcrest states that a hearing was held on its petition on October 12, 2005, and this court has been informed by notice of supplemental authority filed by the Department that Oakcrest's request for license renewal was denied.
Oakcrest argues that the emergency suspension of its license violated its due process rights under section 120.60(6), Florida Statutes, because the Department failed to promptly institute and act upon a suspension or revocation proceeding pursuant to that statute.[4] Oakcrest further argues that the Emergency Order failed to properly notify it of its right to a prompt hearing. Because reversal is required based on the Department's failure to promptly institute formal proceedings, the notice issue is rendered moot and we will not address it.
Section 120.06(6) gained ascendancy to become the controlling legislative authority regarding the basic procedural requirements to summarily suspend or revoke a license to operate a child day care when the Legislature enacted the provisions of section 402.310, Florida Statutes. The latter statute is part of the chapter governing day care facilities and the licensing thereof, and it allows the Department to suspend *1177 a day care's license for the violation of any of chapter 402's provisions, including the section governing a day care's accountability for children being transported by it. § 402.310(1), Fla. Stat. (2005). Section 402.310(2) requires the Department to "determine the matter in accordance with procedures prescribed in chapter 120." § 402.310(2), Fla. Stat. (2005). Thus we advert to the provisions of section 120.60(6) of the Administrative Procedures Act, which governs emergency license suspension procedures. It states:
(6) If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:
(a) The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;
(b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and
(c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable. Summary suspension, restriction, or limitation may be ordered, but a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon.
Pursuant to section 120.60(6)(b), an agency is restricted to taking only such action as is necessary to protect the public interest. Where that action is taken prior to a hearing and an emergency order is entered suspending or revoking a license, section 120.60(6)(c) requires that "a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon." Although the Legislature did not provide a test to determine promptness, the obvious purpose of the statute is to require that suspension or revocation proceedings be promptly instituted lest a constitutionally-protected right to procedural due process be unduly restricted or abrogated by a slow administrative process.[5] Because a formal proceeding under section 120.60(6) was never instituted, it is not necessary that we resolve the issue of what "prompt" means or formulate a test to make that determinationsuffice it to say that what was never done is never prompt.
*1178 It is the Department's responsibility to promptly institute the formal suspension or revocation proceeding, which allows the licensee the opportunity to contest the allegations and factual matters relied upon by the Department to take away the license. Field v. State, Dep't of Health, 902 So.2d 893, 895 (Fla. 1st DCA 2005) ("Section 120.60(6)(c) requires, in cases of summary suspension, that the Department promptly institute a formal suspension or revocation proceeding pursuant to sections 120.569 and 120.57, Florida Statutes (1999). In these formal proceedings, licensees may dispute the factual matters relied upon by the Department."); see also Bio-Med Plus, Inc., v. State, Dep't of Health, 915 So.2d 669 (Fla. 1st DCA 2005); Broyles v. State, Dep't of Health, 776 So.2d 340, 341 (Fla. 1st DCA 2001). Because the Department never instituted formal proceedings, Oakcrest's procedural due process rights were violated.
The Department argues that because the suspension affected only three business days and there would have been no possible way to hold the hearing prior to the date the license expired on its own, it was relieved of any responsibility to institute formal proceedings. We reject this argument. The Department admits that the suspension was introduced into evidence at the license renewal hearing held pursuant to Oakcrest's urging. The fact of the suspension affected Oakcrest for three business days and may have adversely affected the outcome of its request to renew its license. We believe that Oakcrest had the right to a hearing, regardless of the number of days affected by the suspension. Acceptance of the Department's argument would not accord procedural due process to the licensee within contemplation of section 120.60(6) or the constitutions, both Florida and federal, and would so diminish this valuable constitutional right that it would virtually become of little worth to anyone whose license is placed in jeopardy by the emergency provisions of the statute. We conclude that failure on the part of the Department to abide by the requirements of the statute is an error of constitutional dimensions that fatally infected the Emergency Order of Suspension and requires reversal.
REVERSED.
PLEUS, C.J. and LAWSON, J., concur.
NOTES
[1] U.S. Const. Amend. XIV, U.S. Const.; Art. I, § 9, Fla. Const.
[2] Appellant Joann Jones is referred to in the briefs as being the owner of Oakcrest Early Education Center, Inc. The appellants will be collectively referred to as "Oakcrest."
[3] This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.100(c)(3) (providing appellate jurisdiction to review "[a] petition to review non-final agency action under the Administrative Procedure Act"). See also § 120.68(1), Fla. Stat. (2005) ("A party who is adversely affected by final agency action is entitled to judicial review. A preliminary, procedural, or intermediate order of the agency or of an administrative law judge of the Division of Administrative Hearings is immediately reviewable if review of the final agency decision would not provide an adequate remedy."); § 120.60(6)(c), Fla. Stat. (2005) ("If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances.... The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable.").
[4] Oakcrest also argues that the Emergency Order is deficient because it fails to give details sufficient to demonstrate immediate danger, necessity, and procedural fairness and was too harsh where there were other, less intrusive, means available to address the incident. We disagree and conclude, without further discussion, that the order was not deficient in this regard.
[5] See Allied Educ. Corp. v. State, Dep't of Educ., Bd. of Indep. Postsecondary Vocational, Technical, Trade & Bus. Sch., 573 So.2d 959, 961 (Fla. 1st DCA 1991) ("Absent these procedures, emergency action taken by an agency prior to providing an opportunity for the affected person(s) to be heard would run afoul of well-established constitutional guarantees of procedural due process.") (citing Aurora Enters. v. State, Dep't of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 395 So.2d 604, 605-07 (Fla. 3d DCA 1981); Commercial Consultants Corp. v. Dep't of Bus. Regulation, Div. of Fla. Land Sales & Condos., 363 So.2d 1162 (Fla. 1st DCA 1978)); see also Barry v. Barchi, 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (addressing due process procedural safeguards required following emergency suspension of a horse trainer's license by racing authorities and recognizing the trainer's paramount interest in a speedy resolution of the controversy; holding that it was necessary that the trainer "be assured a prompt postsuspension hearing, one that would proceed and be concluded without appreciable delay," and that "[b]ecause the statute as applied in this case was deficient in this respect, [the trainer's] suspension was constitutionally infirm under the Due Process Clause of the Fourteenth Amendment").