PER CURIAM.
In these consolidated proceedings, Ey-eMed Vision Care and CompBenefits Company seek review of nonfinal administrative action of the Department of Management Services calling for the continuation of a contract award process notwithstanding the pendency of petitioners’ protests of the proposed award. We conclude that the agency’s order fails to satisfy the burden imposed by statute to justify overriding the otherwise mandatory statutory stay resulting from the filing of petitioners’ protests, and therefore quash the order.
On April 25, 2007, DMS issued an Invitation to Negotiate, seeking a vendor to provide group vision insurance benefits to state employees for a term commencing on *203 January 1, 2008. After evaluation of the written submissions, the top four vendors, which included EyeMed, CompBenefits, and Spectera, engaged in further negotiations with the agency, and on July 9, 2007, DMS posted its notice of intent to award the contract to Spectera. EyeMed and CompBenefits thereafter filed timely formal written protests of the proposed award pursuant to section 120.57(3), Florida Statutes (2006), and those protests are currently pending before an Administrative Law Judge of the Division of Administrative Hearings.
Upon filing of the formal written protests, the automatic statutory stay of the contract award process set forth in section 120.57(3)(c), Florida Statutes (2006), became operative. That statute provides:
Upon receipt of the formal written protest that has been timely filed, the agency shall stop the solicitation or contract award process until the subject of the protest is resolved by final agency action, unless the agency head sets forth in writing particular facts and circumstances which require the continuance of the solicitation or contract award process without delay in order to avoid an immediate and serious danger to the public health, safety, or welfare.
Pursuant to section 110.123(3)(d)4., Florida Statutes (2006), the provisions of section 120.57(3) apply to DMS’s contracting process for the provision of state group insurance benefits. However, section 110.123(3)(d)4.b states that:
As an alternative to any provision of s. 120.57(3), the department may proceed with the bid selection or contract award process if the director of the department sets forth, in writing, particular facts and circumstances which demonstrate the necessity of continuing the procurement process or the contract award process in order to avoid a substantial disruption to the provision of any scheduled insurance services.
Invoking section 110.123(3)(d)4.b, DMS issued a statement on August 3, 2007, that it would proceed with the contract award process concerning the provision of group vision insurance benefits. That statement, which is the subject of the petitions for review herein, recites the following:
STATEMENT OF CONTRACT AWARD PROCESS PURSUANT TO CHAPTER 110.123(3)(d)4b, FLORIDA STATUTES
The State of Florida, Department of Management Services, (“Department”) hereby makes the determination that in order to avoid a substantial disruption to the provision of scheduled insurance services.
1. On April 25, 2007, the Department posted its Invitation to Bid, No. 06/07-134, for Vision Benefits Insurance. The purpose of the solicitation was to establish a contract for voluntary Group Vision Benefits Insurance to be offered to state employees.
2. On July 9, 2007, the Department posted its Notice of Intent to Award the contract for group vision benefits insurance to Spectera, Inc.
3. Pursuant to Chapter 110.123(3)(d)4b, Florida Statutes, the department may proceed with the contract award process if the “director of the department sets forth, in writing, the particular facts and circumstances which demonstrate the necessity of continuing the procurement process or the contract award process in order to avoid a substantial disruption to the provision of any scheduled insurance services.”
4. The facts and circumstances which demonstrate the necessity of con *204 tinuing the contract award process are:
a. Group vision insurance is offered to state employees as a voluntary benefit. During the open enrollment period, the state employee has the opportunity to elect to participate in this benefit.
b. The open enrollment period for state employees to make any additions, deletions or changes to their insurance coverage beginning January 1, 2008, takes place during the month of October 2007.
c. In order to ensure timely distribution of materials, the Department is required to have all information pertaining to insurance coverage options available for consideration by state employees during the open enrollment period.
d. Spectera, Inc. is not the current provider of group vision insurance benefits to state employees. In order to avoid a substantial disruption to the provision of any scheduled insurance service, time is of the essence to continue the contract award process.
5. Therefore, based on the foregoing facts and circumstances, the department will proceed with the contract award process for group vision insurance.
As the parties acknowledge, the validity of a DMS action taken pursuant to section 110.123(3)(d)4.b has not previously been addressed in Florida case law. However, we find that cases interpreting the general stay override provision of section 120.57(3)(c) are instructive since although the two statutes describe different conditions that will justify overriding the stay, both require a written statement of the agency head detailing “particular facts and circumstances” showing that the requisite condition exists.
In Cianbro Corp. v. Jacksonville Transportation Authority, 473 So.2d 209 (Fla. 1st DCA 1985), we recognized that, “[t]he legislature has provided a comprehensive scheme for resolving protests arising from the contractual bidding process” and that “[t]his scheme envisions that all contract awards will be stayed until the protest is resolved.” Id. at 212. Given the sound policy reasons for staying the contract award process during the pen-dency of an administrative protest, “this scheme should be upset in only the most compelling circumstances.” Id. Moreover, as is the case in other contexts where an agency takes action without the benefit of allowing aggrieved parties the opportunity to be heard, we conclude that every element necessary to the validity of DMS’s action under section 110.123(3)(d)4.b must appear on the face of its written statement. See Bio-Med Plus v. Dep’t of Health, 915 So.2d 669 (Fla. 1st DCA 2005); Witmer v. Dep’t of Bus. & Prof'l Regulation, 631 So.2d 338- (Fla. 4th DCA 1994); Commercial Consultants Corp. v. Dep’t of Bus. Regulation, 363 So.2d 1162 (Fla. 1st DCA 1978). Thus, in order to be valid, DMS’s statement must articulate “in writing, the particular facts and circumstances which demonstrate the necessity of continuing the procurement process or the contract award process in order to avoid a substantial disruption to the provision of any scheduled insurance services.”
Turning to the agency statement at issue here, we conclude that it falls well short of stating “particular facts and circumstances” demonstrating the “necessity” required by the statute. Although DMS indicates that it is necessary for the contract award process to continue in order to accommodate the scheduled open enrollment period, it does not meaningfully *205 explain why this is the case. “Necessity” is not synonymous with “expedient” or “efficient,” and in determining whether the necessity for continuing the contract award process has been shown, the agency bears some burden of showing, through the articulation of particular facts and circumstances, that proceeding with the process is the only reasonable alternative to assure that the provision of insurance services will not be substantially disrupted. Cf. Premier Travel Int’l, Inc. v. State, Dep’t of Agric. & Consumer Servs., 849 So.2d 1132 (Fla. 1st DCA 2008) (discussing, as an element of the “necessity” of an immediate final order, the agency’s failure to address the availability of less harsh remedies). Similar to one of the defects found in the agency action challenged in Cianbro, the statement likewise does not explain why DMS was constrained to adopt a procurement schedule that seemingly did not allow the time required to resolve any protest of the proposed award.
The deficiencies in DMS’s statement are made apparent when it is compared to the similar administrative action upheld by the court in AvMed Inc. v. State, Sch. Bd. of Broward County, 790 So.2d 571 (Fla. 4th DCA 2001). In AvMed, a disappointed bidder filed a formal protest of the school board’s decision to award a contract for employee health insurance to a competitor. Despite the pendency of that protest, the board issued a notice pursuant to section 120.57(3)(e) overriding the statutory stay of the contract award process. In its notice, the board explained that it had been informed by one of the two current carriers that despite its contractual obligation to do so, it would no longer provide coverage for board employees. The board had also determined that the other carrier would be unable to assume coverage for the affected employees. Because of these circumstances beyond its control, it was necessary for the board to install a replacement provider, and the time remaining to do so before the defaulting incumbent provider would cease providing coverage made it necessary to award the contract immediately despite the pending protest.
In contrast, DMS’s statement fails to set forth the same sort of particularized facts and circumstances demonstrating that overriding the stay is necessary in this case. Instead, like the agency action invalidated in Cianbro, DMS has set forth only conclusory allegations, without any explanation as to why these circumstances could not reasonably have been prevented, or that other, less drastic measures might suffice to avoid a substantial disruption in the provision of insurance services.
Accordingly, we grant the petitions for review and quash the agency’s “Statement of Contract Award Process.” In so doing, we do not reach the question of whether overriding the stay and continuing the contract award process is necessary. Rather, we hold only that DMS has failed to satisfy its statutory obligation to articulate, in writing, “the particular facts and circumstances which demonstrate the necessity of continuing ... the contract award process in order to avoid a substantial disruption to the provision of any scheduled insurance services.”
PETITIONS FOR REVIEW GRANTED; AGENCY STATEMENT QUASHED.
ALLEN, LEWIS, and ROBERTS, JJ., concur.