IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

OSAKATUKEI O. OMULEPU,
M.D.,

 Petitioner,

v.

STATE OF FLORIDA,
DEPARTMENT OF HEALTH,

 Respondent.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-1229

Opinion filed August 16, 2016.

Petition for Review of Non-Final Agency Action -- Original Jurisdiction.

Monica Felder Rodriguez of Rodriguez & Perry, P.A., Coral Springs, for Petitioner.

Sarah Young Hodges, Chief Appellate Counsel, Florida Department of Health, Tallahassee, for Respondent.

PER CURIAM.

 Osakatukei O. Omulepu, M.D., petitions for review of the Order of Emergency

Restriction of License (hereafter "the ERO") issued by the Department of Health

prohibiting him from performing liposuction or any other procedure using the tumescent technique.[1]  Dr. Omulepu argues that the ERO is facially insufficient to justify this emergency restriction on his license because the ERO does not adequately allege that the complained of conduct is likely to continue.  We agree.  Accordingly, we quash the ERO.

An administrative agency is authorized to issue an emergency order restricting a license if the agency finds that "the immediate serious danger to the public health, safety, or welfare" requires such action.  § 120.60(6), Fla. Stat. (2015).  "In addition to alleging an 'immediate serious danger,' courts require the factual allegations of an [emergency order] to demonstrate that '(1) <u>the complained of conduct is likely to continue</u>; (2) the order is necessary to stop the emergency; and (3) the order is sufficiently narrowly tailored to be fair.'"  <u>Nath v. Dep't of Health</u>, 100 So. 3d 1273, 1276 (Fla. 1st DCA 2012) (emphasis added) (quoting <u>Kaplan v. Dep't of Health</u>, 45 So. 3d 19, 21 (Fla. 1st DCA 2010)).  Appellate review of an emergency order is limited to "examining the face of the order itself to determine if the elements were alleged with sufficient detail."  <u>Id.</u>

Allegations of past conduct resulting in harm can support an emergency order suspending or restricting a license if the harm is sufficiently egregious and of a nature likely to be repeated.  See <u>Bio-Med Plus, Inc. v. Dep't of Health</u>, 915 So. 2d 669, 673

---

[1]  We have jurisdiction.  <u>See</u> § 120.68(1), Fla. Stat. (2015); Fla. R. App. P.

2

(Fla. 1st DCA 2005); <u>Bertany Ass'n for Travel & Leisure, Inc. v. Dep't of Fin. Servs.</u>, 877 So. 2d 854, 855 (Fla. 1st DCA 2004) (citing <u>Saviak v. Gunter</u>, 375 So. 2d 1080, 1082 (Fla. 1st DCA 1979), for the proposition that "allegations of past conduct could reflect the continuing nature of the offense"). However, where the past conduct significantly pre-dates the emergency order and there is nothing else in the licensee's history that would support an inference of continuing bad conduct, allegations of past harm standing alone are insufficient to support the emergency suspension or restriction of a license. See <u>Bio-Med Plus</u>, 915 So. 2d at 673-74; <u>Crudele v. Nelson</u>, 698 So. 2d 879, 880 (Fla. 1st DCA 1997); <u>cf.</u> <u>Daube v. Dep't of Health</u>, 897 So. 2d 493, 495 (Fla. 1st DCA 2005) (granting stay of emergency suspension order because the complained of conduct was not likely to recur and noting that "[p]unishment for past behavior is properly the subject of an administrative complaint pursuant to section 120.60(5) wherein the licensee is afforded the opportunity to challenge the factual basis of the complaint through a section 120.57(1) hearing").

Here, the Department alleged in the ERO that Dr. Omulepu committed medical malpractice in May 2015 when performing elective cosmetic surgery procedures on four patients over a three-day period.[2] With respect to the likelihood that this bad

---

9.030(b)(1)(C), 9.190(b)(2).

[2] Three of the patients underwent a liposuction procedure commonly known as a "Brazilian Butt Lift," and the fourth patient underwent a different liposuction procedure. Although the allegations of malpractice and resulting harm differed for each patient, one common element was Dr. Omulepu's alleged use of a tumescent

3

conduct would continue, the ERO alleged only that: "The extreme number of violations that occurred within this . . . period, which resulted in significant and lasting patient harm, indicates that Dr. Omulepu's conduct is likely to continue. If his conduct continues, it will cause significant harm to his patients."

While there is no dispute about the seriousness of the harm allegedly suffered by the patients listed in the ERO, the Department failed to sufficiently allege that Dr. Omulepu's conduct that allegedly caused that harm is of a nature that is likely to continue. Notably, the ERO was issued in February 2016, more than nine months after the alleged instances of malpractice, and it contains no allegations about Dr. Omulepu's history as a licensed physician to suggest that he has made, or is likely to make, the same alleged errors again.

The Department argues in response to the petition for review that Dr. Omulepu's past conduct is likely to continue because there is no evidence that he modified his practices since May 2015. However, the necessary allegations to support this argument are not contained on the face of the ERO. Moreover, as Dr. Omulepu points out in his reply to the Department's response, the fact that he has not been the subject of any prior disciplinary actions, coupled with the passage of time since May 2015 without additional reports of alleged malpractice, actually supports the contrary inference, i.e., that Dr. Omulepu has modified his procedures to avoid adverse outcomes such as those

solution that contained substantially less than the standard concentration of

4

alleged in the ERO.

Accordingly, for the reasons stated above, we grant Dr. Omulepu's petition for review and quash the ERO.

PETITION GRANTED; ORDER QUASHED.

B.L. THOMAS, WETHERELL, and WINSOR, JJ., CONCUR.

---

epinephrine, which resulted in significant blood loss in each patient.