631 So.2d 338 (1994)
John R. WITMER, Petitioner,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Respondent.
No. 93-3232.
District Court of Appeal of Florida, Fourth District.
February 2, 1994.
*339 Gary R. Rutledge and Harold F.X. Purnell of Rutledge, Ecenia, Underwood & Purnell, P.A., Tallahassee, for petitioner.
Joseph M. Helton, Jr., Sr. Atty., Dept. of Business Regulation Professional Regulation, Tallahassee, for respondent.
*340 PER CURIAM.
This is an appeal from an emergency order of the Department of Business and Professional Regulation suspending the pari-mutuel wagering license of John R. Witmer, a veterinarian. The issue for review is the sufficiency of that emergency order. We find the order facially inadequate, grant the petition and quash the order. We do not reach nor determine the merits of the disciplinary action which remains to be resolved at a formal hearing on the Department's complaint.
Petitioner's pari-mutuel wagering license was suspended by emergency administrative order on October 19, 1993 (hereinafter "complaint/order"). The suspension order is appended to and incorporates the allegations contained in the Department's administrative complaint.
The emergency order of suspension charges that the petitioner failed to report gratuities and conspired to commit a fraudulent act in connection with racing, in violation of Florida Administrative Code Rule 61D-1.002(18) and section 550.235(2), Florida Statutes (1993).
Witmer is a veterinarian whose practice includes the treatment of race horses. Veterinarians who treat animals involved in pari-mutuel racing are licensed under section 550.10(1)(b), Florida Statutes. It appears that the November 1992 conversation occurred during the window period between the repeal of various provisions of the Pari-Mutual Wagering Act by 1992 Fla. Laws ch. 197 and the effective date of the new provisions added by 1992 Fla. Laws ch. 348. This issue is not material to our decision. The Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering is authorized to suspend or revoke these licenses for violations of Florida Statutes chapters 550 or 551 or the administrative rules of the Department. § 550.10(1)(b), Fla. Stat. (1993).
The complaint/emergency order of suspension alleges that on November 11, 1992, Witmer met with a horse owner named Berger and an undercover detective (not identified in the complaint/order) and discussed the use of Clenbutoral, which is alleged to be an illegal substance used to improve the performance of race horses. Witmer is alleged to have provided the men with the name of a source for the drug. The complaint does not reveal whether the alleged source provided any Clenbutoral or even whether he or she in fact had access to the drug.
On April 2, 1993, Witmer allegedly met again with the two men and discussed how Clenbutoral could be administered, saying that he could keep a filled syringe available for injection in his truck if they purchased the drug. He cautioned the men to be careful, because the drug is illegal.
The order charges that each conversation constituted a separate conspiracy to commit a fraudulent practice in relation to racing, in violation of rule 61D-1.002(18), Florida Administrative Code, and that Witmer additionally conspired to violate section 550.235(2), Florida Statutes, which prohibits conspiracy to alter the outcome of a horserace through the administration of drugs. The complaint/order contains no allegation that the discussions referred to any horse that was authorized to race in Florida.
The order additionally charges Witmer with one count of failure to report gratuities associated with races. There are no factual allegations whatsoever contained in the complaint/order that relate to this charge.
This court has jurisdiction to review emergency administrative orders under section 120.54(9)(a)3, Florida Statutes (1993). Little v. Coler, 557 So.2d 157, 158 (Fla. 1st DCA 1990). The scope of review is limited to a determination of whether the emergency order complies with the requirements of section 120.54(9)(a)3. Gervais v. Division of Alcoholic Beverages & Tobacco, 438 So.2d 90, 90-91 (Fla. 2d DCA 1983). That section imposes the following requirements upon administrative agencies that seek to take emergency action which substantially affects a licensee or other individual:
The agency publishes in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety or welfare and its reasons for concluding that the procedure used is fair under the circumstances. .. . *341 The agency's findings of immediate danger, necessity and procedural fairness shall be judicially reviewable.
If the facts alleged in the complaint and order are sufficient to demonstrate immediacy, necessity and fairness, no hearing is required prior to the emergency suspension. Lerro v. Department of Professional Regulation, 388 So.2d 47, 48 (Fla. 2d DCA 1980). These procedures have been found to be sufficient to protect the licensee's due process rights. Saviak v. Gunter, 375 So.2d 1080, 1081-82 (Fla. 1st DCA 1979). In its amended response, the department alleges that it had offered to set a hearing nine days after the suspension took effect, but that the petitioner rejected the offer and filed his petition for review instead. Of course, this offer would not cure the defect if the initial suspension was unlawful under section 120.54(9)(a)3.
The factual allegations contained in the emergency order must sufficiently identify particularized facts which demonstrate an immediate danger to the public. Pinacoteca Corp. v. Department of Business Regulation, 580 So.2d 881, 882 (Fla. 4th DCA 1991). Where, as here, no hearing was held prior to the entry of the emergency order, every element necessary to its validity must appear on the face of the order. Commercial Consultants Corp. v. Department of Business Regulation, 363 So.2d 1162, 1164 (Fla. 1st DCA 1978) (administrative cease and desist order). The order must be "factually explicit and persuasive concerning the existence of a genuine emergency." Id. at 1165, quoting, Florida Home Builders v. Division of Labor, 355 So.2d 1245, 1246 (Fla. 1st DCA 1978); Golden Rule Ins. Co. v. Department of Ins., 586 So.2d 429, 430 (Fla. 1st DCA 1991).
The petitioner's first argument is that the complaint/order fails to allege facts sufficient to constitute any violation of the applicable rules or statutes. The Department responds by arguing that it has alleged sufficient facts to put the petitioner on notice of the violations of which he has been charged. The Department cites no authority for its contention that section 120.54(9)(a)3 requires only notice pleading and such an interpretation would conflict with the requirement of specificity contained in both the section itself and the caselaw interpreting the section.
With regard to the charge that the petitioner failed to report gratuities, the defect is patently obvious. The complaint/order does not even reference rule 61D-1.002(15), Florida Administrative Code, which requires that offers of gratuities be reported and sets forth the elements of a reporting violation. The complaint/order does not contain any allegation that the petitioner was either offered a gratuity or accepted one, or that he failed to "promptly" report the gratuity to a steward or judge, as required by the administrative rule. The order is legally insufficient to demonstrate that an emergency situation exists on the basis of the Department's bare conclusory allegation that the petitioner failed to report gratuities.
Petitioner points to two defects in the conspiracy allegations. First, he argues that the complaint/order fails to specifically allege that he ever offered to administer Clenbutoral to a race horse for the purpose of affecting the outcome of a race.
The Department charges that the offer to administer the drug violated section 550.235(2), Florida Statutes, and Florida Administrative Code Rule 61D-1.002(18). Both require that the allegedly prohibited behavior involve racing or a race animal. Section 550.235(2) requires that the conspiracy be directed toward affecting the outcome of a race and that the attempted administration of medication be to a race animal:
Any person who attempts to affect the outcome of a horserace or dograce through administration of medication or drugs to a race animal as prohibited by law; who administers any medication or drugs prohibited by law to a race animal for the purpose of affecting the outcome of a horserace or dograce; or who conspires to administer or to attempt to administer such medication or drugs is guilty of a felony of the third degree... .
(Emphasis supplied.) Administrative rule 61D-1.002(18) provides that the alleged fraudulent acts be committed in relation to racing:

*342 No person shall conspire with any other person for the commission of, or connive with any other person in any corrupt or fraudulent practice in relation to racing or jai alai nor shall he commit such an act on his own account.
(Emphasis supplied.)
The complaint/order alleges only that the petitioner conspired with "Herman Berger, a horse owner" to obtain and administer Clenbutoral to "the horse." Nowhere is Mr. Berger identified as a "race horse owner" or alleged to be involved in any way with horse racing. And nowhere is the horse in question identified in any manner or alleged to be a "race horse." The failure to allege an essential element of a violation renders the complaint and emergency order facially insufficient. Anderson v. Department of Health & Rehabilitative Servs., 482 So.2d 491, 199 (Fla. 1st DCA), reh'g granted, 485 So.2d 849 (Fla. 1st DCA 1986).
The Department does not directly address this issue in its amended response, but urges that it should not be held to a strict standard of pleading, since the complaint/order was sufficient to apprise the petitioner of the violation that was being charged. But if the Department suspends a license without hearing on the ground that it is required to do so in order to preserve the integrity of horse racing and public confidence in the sport, it does not seem to be too much to require that the Department at least allege that the charged violations have some connection with horse racing or race horses.
Although the petitioner has not raised this as a defect, there is an additional problem with the Department's allegation that Clenbutoral is an unlawful substance. The order states that Clenbutoral is not approved in the United States and that it is an illegal substance under 1992 Fla. Laws ch. 69 (reenacted as section 499.03, Florida Statutes (1993)). However, this section does not make any substance illegal; it simply prohibits unauthorized persons from possessing or delivering certain categories of drugs (including new drugs which are not in general use and experimental drugs) without a valid prescription. The section specifically exempts licensed practitioners and permit holders from its provisions. Ch. 92-69, Laws of Fla. (reenacted as section 499.003, Florida Statutes (1993)). Nowhere in the complaint/order has the Department alleged that the petitioner lacks the necessary license and/or permit that would allow him to lawfully dispense or administer Clenbutoral.
The petitioner also argues that the complaint/order fails to allege any agreement between the petitioner and Mr. Berger to commit the violation. The Department argues that it has alleged that the petitioner "offered" to administer an illegal drug and that this allegation is sufficient to put the petitioner on notice that he is charged with conspiracy.
Agreement is a necessary element of the crime of conspiracy, which is defined as an express or implied agreement of two or more persons to engage in a criminal or unlawful act. Robinson v. State, 610 So.2d 1288, 1289 (Fla. 1992), cert. filed, no. 93-6974 (U.S. Nov. 8, 1993). Because the Department has not alleged agreement, at most the complaint/order charges solicitation, which is defined as the enticement or encouragement of another to commit a crime, even if the other has no intention to follow through. State v. Johnson, 561 So.2d 1321, 1322 (Fla. 4th DCA 1990). But neither section 550.235 nor rule 61D-1.002(18) prohibits the act of soliciting a crime or violation, only the commission of the substantive offense and/or conspiracy to commit the offense.
Finally, the petitioner argues that the Department has not demonstrated that immediate suspension is necessary to protect the public interest. Section 120.54(9)(a)3 requires more than "a general, conclusory prediction of harm." Commercial Consultants, 363 So.2d at 1164. The public harm alleged in the complaint/order is a "potential compromise to state revenue." While loss of state revenue was found to be a sufficient reason for emergency action in Little, 557 So.2d at 160 and Calder Race Course v. Board of Business Regulation, 319 So.2d 67, 68 (Fla. 1st DCA 1975), those cases involved immediate, concrete economic threats, rather than mere speculation. In Calder the complaint alleged a direct and immediate loss of state *343 tax revenue. In Little the agency demonstrated that a budget revision was necessary to keep a state benefits program functioning through the end of the current fiscal year.
The order alleges that revenue could be indirectly affected in this case if the public lost confidence in horseracing. The Department cites no authority that permits an emergency suspension on such an indirect and attenuated claim of possible economic injury. Under the Department's theory, it would be virtually exempt from the requirements of section 120.54(9)(a)3 because any violation of the pari-mutuel rules or statutes could upset the public confidence, which could lead to a possible loss of revenue.
The Department argues that "[p]ublic knowledge of the continued licensure of an individual who has demonstrated a willingness to administer illegal drugs to horses competing at a pari-mutuel wagering facility would cause an erosion in the integrity of the competition... ." While that may be a generally true statement, the complaint/order does not allege that the petitioner committed any act in connection with pari-mutuel racing.
The Department further argues that the petitioner's past "willingness to involve himself in illegal activity" indicates a willingness to commit future violations which must be prevented by the immediate suspension of his license. This allegation is insufficient to support the emergency suspension. First, the demonstration of immediate harm must be made within the four corners of the order, and in this case neither the order nor the incorporated complaint contain this allegation. Pinacoteca, 580 So.2d at 882.
Past acts may be sufficient to allege a danger of future misconduct if the conduct alleged is sufficiently serious and is likely to be repeated. Stock v. Department of Banking & Fin., 584 So.2d 112, 115 (Fla. 5th DCA 1991). The order does not allege that the license holder has ever administered any illegal substance in the past or that he has discussed the use of Clenbutoral with any other owners. It merely sets forth two conversations in which the license holder offered to assist one horse owner in administering a substance which, under some circumstances may have been illegal, but those circumstances were not alleged to be present. This is not enough to meet the Stock criteria. The Department's characterization of the petitioner's "willingness" to become involved in criminal activity is nothing more than an allegation of criminal propensity. The Department cites no authority which would permit it to suspend a license upon a mere showing of propensity to commit violations.
We therefore conclude that the Department's findings of immediate danger to the public welfare are not supported by specific facts and reasons as required by section 120.54(9)(a)3, Florida Statutes.
PETITION GRANTED; ORDER QUASHED.
HERSEY, GLICKSTEIN and FARMER, JJ., concur.