849 So.2d 1132 (2003)
PREMIER TRAVEL INTERNATIONAL, INC., Travelease International, Inc., d/b/a Travelez, Brylec, Inc., d/b/a Brylec Marketing, Brian Yamhure and Henry Yamhure, Appellants,
v.
STATE OF FLORIDA DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Appellee.
Nos. 1D02-3107, 1D02-3108, 1D02-3109.
District Court of Appeal of Florida, First District.
July 17, 2003.
*1134 Paul R. Ezatoff and Katherine E. Giddings, of Katz, Kutter, Alderman, Bryant & Yon, P.A., Tallahassee, for Appellant.
William N. Graham and Raymond C. Conklin, Tallahassee, for Appellee.
BROWNING, J.
These consolidated cases are appeals from three immediate final orders (IFOs) issued by the Department of Agriculture and Consumer Services (the Department) pursuant to section 120.60, Florida Statutes, requiring Appellants to cease and desist from acting as sellers of travel and sellers of business opportunities. Because the orders are facially insufficient, we reverse.
Premier Travel International, Inc. (Premier), is a travel agency that conducts "travel training" and seminars. Travelease International, Inc. (Travelease), is a sales and administrative company. Brylec, Inc., is a telemarketing company. All three businesses operate from 871 East Commercial Boulevard in Fort Lauderdale. Either Henry Yamahure or his son, Bryan, owns the corporations.
On July 26, 2002, the Department filed a complaint and issued three IFOs. These documents, along with a later amended complaint, alleged that Appellants violated the Sellers of Travel Act and the Sellers of Business Opportunities Act by offering, in exchange for an investment of $6,000, travel agent training and services so that individuals could both receive discounted travel and sell travel to others. See §§ 559.80559.815, 559.926559.939, Fla. Stat. (2001). The first IFO suspended the seller-of-travel registration certificate of Premier, required Premier to cease operation as a seller of travel, and revoked Premier's security reduction. The second IFO suspended the registration certificate of Travelease and required that it cease operation as a seller of travel. The third IFO required Appellants to stop selling business opportunities. These orders were stayed by three separate orders of this Court.
The IFOs in this case violate due process because they are facially insufficient. IFOs issued prior to a hearing, as these were, must contain facts sufficient to demonstrate immediate danger, necessity, and procedural fairness. See, e.g., Witmer v. Dep't of Bus. and Prof'l Regulation, 631 So.2d 338 (Fla. 4th DCA 1994). These IFOs do not, on their face, demonstrate immediate danger, necessity, or procedural fairness.
A. Immediate threat to public health, safety, and welfare
Personal monetary losses can be the sort of danger addressed by section 120.60, Florida Statutes. See Stock v. Dep't of Banking and Finance, 584 So.2d 112 (Fla. 5th DCA 1991) (affirming the emergency suspension of a securities license when a securities agent made eight unauthorized withdrawals from an individual's money market account, totaling $64,970); Saviak v. Gunter, 375 So.2d 1080 (Fla. 1st DCA 1979) (affirming the emergency suspension of an insurance license when an agent withheld remittance of insurance *1135 premiums to the insurer, which resulted in cancellation of the insureds' policies); Crudele v. Nelson, 698 So.2d 879 (Fla. 1st DCA 1997) (reversing an IFO that concerned related transactions between an insurance agent and one client, two years before, on the grounds that it did not demonstrate an emergency); Wolf v. Gallagher, 629 So.2d 1066 (Fla. 2d DCA 1994), (reversing an IFO, and distinguishing Saviak, in holding that no other member of the public was at risk from an insurance agent who failed to remit insurance premiums to two insurance companies).
In determining whether to affirm or reverse such an IFO, courts consider whether the pattern of conduct is likely to continue. In Saviak, this Court emphasized that the allegations reflected the continuing nature of the offense. Saviak, 375 So.2d at 1082. In Stock, the Fifth District noted that a sufficiently egregious past harm may justify an emergency order, particularly if it is "of a nature likely to be repeated." Stock, 584 So.2d at 115. However, in Crudele, this Court found that "the Commissioner sets forth no factual findings of a continuing pattern of conduct that must be stopped in order to prevent further harm to the public" and "no allegations or findings in the order suggest anything in Crudele's history as a licensed agent that would support an inference of such continuing conduct." Crudele, 698 So.2d at 880. And in Wolf, the Second District held that there was no allegation of danger to the public health, safety, and welfare because "nothing in the order indicates that any insured or other member of the public is at risk...." Wolf, 629 So.2d at 1067.
In the instant case, the IFOs do not indicate that the alleged conduct is likely to continue. The allegations of emergency were stated as follows in the first two orders:
It is concluded that the continued registration of Respondent poses an immediate serious danger to the public safety or welfare of unwary and unsuspecting consumers who purchase travel services from Respondent as said consumers may be unaware of Respondent's fraudulent dealings. An EMERGENCY ORDER OF SUSPENSION is required pursuant to Section 120.60(6), Florida Statutes.
If the Department does not suspend the license of Respondent, Florida consumers, and in particular the senior citizens of this State, will suffer financial losses including the loss of retirement funds and/or investments, will be exposed to the fraudulent offering of travel related services, will be fraudulently deprived of their property and the right to benefit therefrom, and will be exposed to being taken advantage of by reason of their age and infirmities.
Similar allegations of emergency were made in the third order, which reads:
It is concluded that the continued operations of Respondents poses [sic] an immediate serious danger to the public safety or welfare of unwary and unsuspecting consumers who purchase business opportunities from Respondents as said consumers may be unaware of Respondents' activities as alleged here-in. An IMMEDIATE FINAL CEASE AND DESIST ORDER is required pursuant to section 120.60(6), Florida Statutes.
If the Department does not issue the immediate final cease and desist order against Respondents, Florida buyers (and in particular those that are senior citizens of this State), will suffer financial losses including the loss of retirement funds and/or investments, will be exposed to the fraudulent offering for sale of business opportunities, will be fraudulently deprived of their property and the right to benefit therefrom, and *1136 will be exposed to being taken advantage of by reason of their age and infirmities.
The orders at issue in the instant case may have been intended to demonstrate that the harm inflicted by Appellants is of a nature that is likely to continue, through allegations that numerous customers were treated poorly and that Appellants attract customers by making phone calls and by representing that "[w]e are a full-service member based Travel Agency offering every aspect of TRAVEL and we offer you benefits that you can NOT achieve on your own." However, these allegations do not demonstrate that future customers are threatened with misconduct of the type suffered by the nine individuals whose experiences are detailed in the orders. The allegations demonstrate only that Appellants welcome more legitimate business. The allegations that Appellants are involved in a "systematic course of conduct" are conclusory. Because the allegations in the IFOs do not demonstrate a likelihood of repetition, the IFOs are facially insufficient.
B. Necessity
There are no explicit allegations that the IFOs in the instant case are necessary. The closest such allegation is that "[i]f the Department does not suspend the license of Respondent [or "issue the immediate final cease and desist order against Respondents"], Florida consumers [or "buyers"], and in particular the senior citizens of this State, will suffer financial losses including the loss of retirement funds and/or investments, will be exposed to the fraudulent offering of travel related services, will be fraudulently deprived of their property and the right to benefit therefrom, and will be exposed to being taken advantage of by reason of their age and infirmities." This allegation is insufficient to demonstrate that the IFOs were necessary.
As Appellants argue, the orders do not contain any factual allegations supporting the conclusion that the elderly population is at a greater risk from, or is more unwary and unsuspecting than other populations of, Appellants' activities. Appellees' arguments in its brief that loss of money to seniors is irreparable harm, that seniors may have more difficulty presenting their case in court, or that seniors are more susceptible to high-pressure sales tactics are not borne out in the orders. As they are written, the allegations in the orders do not justify the emergency shutdown because they do not demonstrate the level of urgency that would make the orders necessary. Cf. Tauber v. State Bd. of Osteopathic Medical Examiners, 362 So.2d 90, 92 (Fla. 4th DCA 1978) (holding that the immediate necessity of protecting human life necessitated an order revoking the physician's license after the death of a patient); Lee Cty. v. South Florida Water Mgmt. Dist., 766 So.2d 1103 (Fla. 2d DCA 2000) (holding that the threat to the ecosystem of a lake necessitated its immediate drawdown despite the fact that years of mismanagement may have contributed to the crisis).
Stated another way, the orders do not explain why less harsh remedies, such as probation, a fine, or a notice of noncompliance, as listed in sections 559.813(2)(b) or 559.9355(1), Florida Statutes, or even a more narrowly tailored IFO, would be insufficient to stop the alleged harm of pitching an unavailable product by phone to seniors. Cf. Cunningham v. Agency for Health Care Admin., 677 So.2d 61 (Fla. 1st DCA 1996) (holding that a more narrowly tailored IFO could have adequately addressed concerns that a doctor was engaged in a criminal enterprise, lacked medical knowledge, or could not deny drugs to a demanding patient); White Const. Co. Inc. v. State, Dep't of Transp., 651 So.2d 1302, 1305 (Fla. 1st DCA 1995) *1137 (holding that the IFO, which stated that the narrowly tailored action of placing a limerock pit on conditional status in order to pretest the limerock for stability, rather than suspending or revoking approval of the mine, adequately demonstrated the necessity of the IFO).
C. Fairness
The IFOs issued in this case do not meet the fairness requirement. Such an order must be fair in two respects: the remedy must be tailored to address the harm, and the order must provide for an administrative hearing. See White Const., 651 So.2d at 1305. The instant IFOs are not sufficiently narrowly tailored to be fair. Rather than order Appellant to stop selling travel and business opportunities, the Department could have issued an order enjoining Appellants from advertising that customers could find better prices with them than through other sources, or enjoining them from ignoring the three-day contract review period. Cf. Anderson v. Dep't of Health and Rehabilitative Servs., 482 So.2d 491 (Fla. 1st DCA) (holding that HRS could have issued a specific order to keep a husband out of the wife's day-care center, rather than close the center, upon allegations of one unprosecuted incident of abuse by the husband years before), clarified on reh'g, 485 So.2d 849 (Fla. 1st DCA 1986). However, the Department issued orders suspending registration certificates and requiring Appellants to cease and desist, without demonstrating that such a drastic remedy was the only way to avoid future harm. This was error.
Because the three IFOs are facially insufficient, we REVERSE the IFOs.
KAHN and VAN NORTWICK, JJ., CONCUR.