885 So.2d 393 (2004)
ROBIN HOOD GROUP, INC., Jeannie B. Cook a/k/a Barbara J. Cook, Kristan J. Fewkes, Michael Fewkes, Fewkes Management Corporation, and Corey Lama, Appellants,
v.
FLORIDA OFFICE OF INSURANCE REGULATION and Kevin M. McCARTY, as Director, Appellees.
No. 4D03-3376.
District Court of Appeal of Florida, Fourth District.
October 13, 2004.
Rehearing Denied November 16, 2004.
*394 Jeffrey Deery and Richard B. Weinman of Winderweedle, Haines, Ward & Woodman, P.A., Orlando, for appellants.
Clifford A. Taylor, Assistant General Counsel, Office of Insurance Regulation, Tallahassee, for appellees.
SHAHOOD, J.
Appellants, Robin Hood Group, Inc. (Robin Hood), Jeannie B. Cook a/k/a Barbara J. Cook (Cook), Kristan J. Fewkes, Michael Fewkes, Fewkes Management Corporation, and Corey Lama (collectively, appellants) appeal the Immediate Final Order entered by the Office of Insurance Regulation. We affirm.
Cook (and a partner who is not involved in these proceedings) operated a company called Robin Hood International Ltd., Inc. (Robin Hood International). The company was an Illinois corporation in the viatical insurance business.[1] In 1996, on behalf of *395 Robin Hood International, Cook submitted an application for a license as a viatical settlement provider with the State of Florida Treasurer/Insurance Commissioner. The application was denied for several reasons, including failure to fully comply with application requirements and failure to disclose details concerning several bankruptcy filings by Cook. Cook disputed the findings and requested an administrative hearing, but later withdrew that request and the matter was closed. In September 1997, the Department of Insurance (DOI) entered a Cease and Desist order finding that, despite the denial of its application, Robin Hood International had been performing the functions of a viatical provider in Florida. DOI directed the company to immediately discontinue such activities or be subject to penalties.
In November 2000, Cook and Kristan Fewkes (Fewkes) formed Robin Hood, a Florida corporation. Two years later, on behalf of Robin Hood, Cook and Fewkes submitted an application for a viatical insurance broker license in Florida. In the application, it was explained that Robin Hood International remained a viable corporation solely for the purpose of "taking care of old business" and was not actively pursuing new business. Robin Hood was presented as being a separate entity, with the same address and "essentially the same business." The DOI sent Cook a Notice of Denial, advising that the application was denied on the basis that Robin Hood had, in June 2001 and in June 2002, "performed the functions of a viatical settlement provider, or ha[d] entered into or solicited viatical settlement contracts without first having obtained a license from the Department, in violation of Section 626.9912, Florida Statutes." The DOI also served Cook with an Investigative Subpoena commanding her to turn over various documents relating to her business to assist the DOI in determining "the existence of any violation of the Florida Insurance Code."
Jay Paul Newton (Newton), a special investigator with the Florida Department of Financial Services (Office of Insurance Regulation, formerly DOI), filed an affidavit stating that he accessed Robin Hood's website under an assumed name to ascertain whether the company was doing viatical business without a license. He completed the information request form on the web site, giving a fictitious name and using an email address created specifically for this purpose. Three days later, he received a federal express package of information from Robin Hood sent to the Georgia address he had provided in the request. The cover letter from Robin Hood had an address in Palm Beach Gardens, Florida, as did the self-addressed envelope provided for him to return his completed Viatical/Life Settlement Application. Also included in the packet were the following: (1) Viatical/Life Settlement Application; (2) Physician Diagnosis and Competency Statement; (3) Insured Statement of Consent; (4) Notice of Disclosure; (5) Life Insurance Release Form; and a(6) Medical Release Form.
Based on Newton's investigation, the Office of Insurance Regulation entered an Immediate Final Order finding that Robin Hood was in violation of the insurance laws for conducting viatical settlements without a license, and directing Robin Hood and all parties involved to immediately cease and desist from transacting any new viatical insurance business. In addition, Cook was directed to send a letter (to be approved by the department) to each and every viator, policyholder, agent, investor, broker, salesperson, etc. notifying them that no further applications would be accepted, and to deliver to the department a complete accounting of all life insurance contracts purchased, sold or negotiated since *396 the inception of Robin Hood in Florida. The order stated that the issuance of the Immediate Final Order was "fair under the circumstances due to the potential grave harm resulting from unauthorized insurance entities engaging in the business of insurance in Florida."
In regulating the insurance industry, the DOI is vested with the authority to issue cease and desist orders if the department "has reasonable cause to believe" that a person is engaging in conduct that, among others, is "hazardous to the insurance buying public" or which violates any provision of the Florida Insurance Code. § 624.310(3)(a)1, 2, Fla. Stat. (2003). The DOI may issue emergency cease and desist orders without first providing notice and opportunity to be heard only if the department has "reasonable cause to believe that a licensee has engaged in certain wrongful conduct, but also find[s] that such conduct requires emergency action." United Ins. Co. of Am. v. State, Dep't of Ins., 793 So.2d 1182, 1183 (Fla. 1st DCA 2001); see also Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Lewis, 570 So.2d 383 (Fla. 1st DCA 1990) (stating, "Chapter 120, Florida Statutes, contemplates that agencies will only take summary action (action which affects the fundamental rights of a party prior to giving the party notice and opportunity to be heard) in emergency situations").
A cease and desist order entered on an emergency basis must "recite with particularity the facts underlying such finding in the final order." § 120.59, Fla. Stat. (2003). If the facts alleged in the complaint demonstrate "immediacy, necessity and fairness," no hearing is required prior to emergency action. See Witmer v. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering, 631 So.2d 338, 341 (Fla. 4th DCA 1994). It is not sufficient to simply allege a statutory violation. See Unimed v. State, 29 Fla. L. Weekly D889 (Fla. 1st DCA Apr.13, 2004) (holding that it is not enough to make conclusory allegations that practicing in Florida without a license is an immediate danger to the public health). The standard of review of an immediate final order is whether, on its face, the order "sufficiently states particularized facts showing an immediate danger to the public welfare." Saviak v. Gunter, 375 So.2d 1080 (Fla. 1st DCA 1979).
The immediate final order in this case contains factual allegations demonstrating the following: "1. The complained of conduct was likely to continue. 2. The order was necessary to stop the emergency. 3. The order was sufficiently narrowly tailored to be fair." Bertany Ass'n for Travel & Leisure, Inc. v. Fla. Dep't of Fin. Servs., 877 So.2d 854 (Fla. 1st DCA 2004) (citing Premier Travel Int'l, Inc. v. State, Dep't of Agric. & Consumer Servs., 849 So.2d 1132 (Fla. 1st DCA 2003)). Consequently, we affirm the entry of the immediate final order because the facts alleged are sufficiently specific and particularized to demonstrate the risk of immediate and ongoing harm to the insurance buying public. We also affirm the second issue raised by appellant without discussion.
AFFIRMED.
KLEIN, J., and EMAS, KEVIN M., Associate Judge, concur.
NOTES
[1] This business involves facilitating or assisting owners of life insurance policies in selling their policies in exchange for lump sum payments.