972 So.2d 999 (2008)
Sherif KODSY, an individual, Appellant,
v.
DEPARTMENT OF FINANCIAL SERVICES of the State of Florida, Appellee.
No. 4D07-54.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
Rehearing Denied February 18, 2008.
*1000 Holiday Hunt Russell of The Law Offices of Holiday Hunt Russell, Chartered, Hollywood, for appellant.
James A. Bossart, Division of Legal Services, Tallahassee, for appellee.
CONNER, BURTON C., Associate Judge.
Sherif Kodsy seeks review of an Immediate Final Order ("IFO") entered by the Florida Department of Financial Services ("the Department"), pursuant to section 120.569(2)(n), Florida Statutes (2006). The IFO ordered Kodsy to cease and desist "from analyzing insurance policies or counseling or advising or giving opinions relative to insurance policies or otherwise acting as a general lines insurance agent in this state without being properly licensed and appointed as a general lines insurance agent in the Florida Insurance Code." Kodsy attacks the authority and sufficiency of the order, and he contends the statutory and administrative process were applied in an unconstitutional manner. Because we resolve this appeal on the first issue, there is no need to address the second issue.
Kodsy is a Florida licensed building contractor who operates a mold remediation company, All Restoration Services, Inc. ("ARS"). Kodsy is not and never has been a Florida licensed insurance agent.
On December 11, 2006, without notice or hearing, the Department entered an IFO against Kodsy. The IFO found that Kodsy was engaging in the unlicensed and illegal business of analyzing homeowner's insurance policies and counseling, advising and giving opinions relative to homeowner's insurance. However, the IFO contained no factual allegation that Kodsy engaged in or was holding himself out as engaging in business as an insurance agent.[1]
*1001 According to the factual allegations in the IFO, the affidavits of four insurance consumers stated that in the course of hiring ARS to clean up mold damage, Kodsy asked to see each consumer's homeowner's insurance policies, and after reviewing the policies, stated that his work would be covered by the insurance policy. As a result of that assurance, the consumers hired ARS to perform the job. In all four cases, the insurance company would not pay the cost of the restoration.[2] When the consumers did not pay the bill, Kodsy then filed a claim of lien against, their properties.
As part of the authority for issuance, the IFO cites section 626.7315, Florida Statutes, which provides that
. . . no individual shall, unless licensed as a general lines agent:
(4) In this state, engage or hold himself or herself out as engaging in the business of analyzing or abstracting insurance policies or of counseling or advising or giving opinions, other than as a licensed attorney at law, relative to insurance or insurance contracts, for fee, commission, or other compensation.
The IFO makes a factual finding, ". . . SHERIF KODSY has engaged in the unlicensed, and therefore illegal business of insurance, by analyzing insurance policies and counseling, advising and giving opinions relative to insurance contracts in violation of the Florida Insurance Code, including sections 626.112(1)(a) and 626.7315(4), Florida Statutes, respectively."
The order also makes a finding that Kodsy's activities in giving his opinions of coverage "present a grave and immediate risk of financial harm to the businesses and residents of Florida," because "homeowners insurance is a valuable and expensive product that protects the assets of homeowners and is required to be purchased by anyone who has a mortgage loan." In particular, the order describes the harm of Kodsy's activities as follows:
a. The inducement of property owners to enter into contracts that require homeowners to pay him thousands of dollars based on his inaccurate opinion and advice that his mold remediation work will be covered by the property owner's insurance policy. Without KODSY'S opinion and advice that the insurance policy will cover his services, property owners would likely contact their insurance agent or company to inquire as to whether their policy covers mold removal. If homeowners knew that their policies did not cover mold removal they would be able to make informed decisions on whether to do business with All Restoration Services or consult with other mold removal businesses and compare' prices. It would also allow homeowners to consider whether or not they could afford to pay the cost of the services of All Restoration Services. If a homeowner chose to do business with All Restoration Services, knowing insurance will not cover mold removal, the homeowner would also be more likely to review the contract and try to negotiate the costs and terms of the contract.
b. The filing of liens by SHERIF KODSY and/or All Restoration Services on the property of homeowners and the *1002 filing of lawsuits against homeowners who choose to do business with KODSY as a result of being induced by SHERIF KODSY to enter into contracts that require homeowners to pay him thousands of dollars based on his inaccurate opinion and advice that his mold remediation work will be covered by the property owner's insurance policy.
The final finding in the IFO is that allowing Kodsy to continue giving his opinions regarding insurance coverage "poses an immediate danger to the public health, safety and welfare."
Kodsy concedes that the Department has statutory responsibility and authority for investigating violations of the insurance code and issuing cease and desists orders. See sections 624.307 and 624.310, Florida Statutes. However, Kodsy points out that rather than issue the IFO pursuant to section 624.310, which provides for an opportunity for a hearing, the Department chose instead to issue the IFO pursuant to section 120.569(2)(n), Florida Statutes, which makes no provision for a hearing.
When issuing an emergency order with no right for a hearing, an agency must specify facts and reasons which support a finding that an immediate danger to the public health, safety and welfare requires an immediate final order. See § 120.569(2)(n), Fla. Stat. (2006). "Every element necessary to the order's vitality must appear on its face." Crudele v. Nelson, 698 So.2d 879, 879-80 (Fla. 1st DCA 1997) (citing Commercial Consultants Corp. v. Dep't of Bus. Reg., 363 So.2d 1162, 1164 (Fla. 1st DCA 1978)). On appellate review, the court will not accept a general conclusory prediction of harm as support for an emergency order. Id. The reviewing court must determine whether the emergency order "sufficiently identifies] particularized facts which demonstrate an immediate danger to the public." Witmer v. Dep't of Bus. & Profl Reg., 631 So.2d 338, 341 (Fla. 4th DCA 1994).
In order to satisfy due process, "an immediate final order must contain factual allegations demonstrating the following:
1. The complained of conduct was likely to continue.
2. The order was necessary to stop the emergency.
3. The order was sufficiently narrowly tailored to be fair."
Bertany Ass'n for Travel & Leisure, Inc. v. Fla. Dep't of Fin. Servs., 877 So.2d 854, 855 (Fla. 1st DCA 2004). "If the facts alleged in the complaint demonstrate `immediacy, necessity and fairness,' no hearing is required prior to emergency action." Robin Hood Group, Inc. v. Fla. Office of Ins. Reg., 885 So.2d 393, 396 (Fla. 4th DCA 2004) (citing Witmer, 631 So.2d at 341) (emphasis added). "[I]t is not sufficient merely to allege a statutory violation; instead, the order must contain a factual recitation sufficient to demonstrate the existence of an imminent threat of `specific incidents of irreparable harm to the public interest' requiring use of the extraordinary device afforded by section 120.569(2)(n)." UNIMED, Profl Liab. Ins. Co., Ltd. v. Office of Ins. Reg., 884 So.2d 963, 964 (Fla. 1st DCA 2004). Past acts may be sufficient to allege a danger of future misconduct if the conduct alleged is sufficiently serious and is likely to be repeated. Witmer, 631 So.2d at 343 (Fla. 4th DCA 1994); Stock v. Dep't of Banking & Fin., 584 So.2d 112, 115 (Fla. 5th DCA 1991).
Similar to the immediate final orders issued in Crudele and Premier Travel International, Inc. v. State of Fla. Dep't of Agric. & Consumer Servs., 849 So.2d 1132 (Fla. 1st DCA 2003), the IFO in this case does not specifically allege that the conduct will continue and the facts alleged do not support an inference that the conduct *1003 will continue. The IFO in this case describes four different instances in which Kodsy allegedly violated the insurance code in December, 2001, in July, 2004, in November 2004, and in June, 2005. The last occurrence was approximately one year and six months before the IFO was issued. Given the number of instances alleged and the time span between the alleged last violation and the issuance of the order, the IFO does not facially demonstrate that the conduct will continue.
Similar to the immediate final order issued in Premier Travel, the IFO issued in this case does not state facts which demonstrate the order was necessary to stop an emergency. Nor does it explain why another remedy would be insufficient to stop the alleged harm. The Department has the authority under section 624.310(2)(b), Florida Statutes, to institute "such suits or other legal proceedings" as may be needed to enforce the insurance code. Under section 624.310(5), Florida. Statutes, the Department could impose an administrative fine to deal with a violation. Nothing in the IFO in this case explains why an emergency order without a hearing was needed in lieu of other options available to the Department.
The Department in this case has issued a facially deficient IFO which fails to demonstrate that the complained of behavior will continue, and that an emergency order without a hearing is necessary. For those reasons, we reverse the IFO issued by the Department against Kodsy.
WARNER and FARMER, JJ., concur.
NOTES
[1] Neither party makes an issue about whether Kodsy was holding himself out as an insurance agent. We question whether section 626.7315, Florida Statutes, actually proscribes the behavior complained of when Kodsy, acting as a mold repair contractor, offers an opinion about insurance coverage. However, since neither side raised the issue, we do not address it.
[2] The harm described in the IFO suggests that Kodsy gave erroneous advice regarding coverage and lulled the complainants into not contacting their, insurance companies before hiring ARS. Kodsy contends the factual allegations show the insurance companies did provide coverage for at least part of the work and that each complainant was already working with an insurance claim before he made any representations.