BOLIN, Justice.
 

 The City of Abbeville (“the City”) sued Billy Frank Peterson and Jim E. Ellis, Jr. (collectively referred to as “the defendants”), on September 19, 2003, alleging that the defendants had placed a mobile home on certain real property owned by Peterson in such a way that violated § 91.3A2 of Art. IX of the Code of Ordinances of the City of Abbeville, entitled “Special Provisions for Zoning and Subdivision.” The City sought an order requiring the defendants to relocate the mobile home on the property so as to comply with § 91.3A2.
 

 On October 21, 2003, the defendants filed a motion to dismiss the complaint against them, alleging that the complaint failed to state a claim upon which relief could be granted. See Rule 12(b)(6), Ala. R. Civ. P. The City responded, and on March 24, 2004, the trial court entered an order denying the defendants’ motion to dismiss.
 

 The defendants answered the complaint on April 28, 2004. On May 5, 2004, the defendants amended their answer and filed counterclaims alleging breach of an agreement, fraud, negligence and/or wantonness, interference with a contractual relationship, trespass, defamation, invasion of privacy, and negligence of the City’s agent.
 

 On June 16, 2004, the City moved pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss the counterclaims against it. On June 29, 2004, the trial court entered an order denying the City’s motion to dismiss the counterclaims.
 

 On June 29, 2005, the defendants moved for a summary judgment. On August 3, 2005, the City responded to the defendants’ motion for a summary judg
 
 *40
 
 ment. The trial court, on December 14, 2005, entered an order denying the defendants’ motion for a summary judgment.
 
 [1]
 

 On June 1, 2006, the City moved for a summary judgment. On June 27, 2006, the defendants filed their response in opposition to the City’s motion for a summary judgment. Following a hearing, the trial court, on August 17, 2006, entered an order granting the City’s motion for a summary judgment and ordering the defendants to relocate the mobile home on Peterson’s lot so as to comply with § 91.3A2 of Art. IX of the Code of Ordinances of the City of Abbeville. The trial court also summarily dismissed the defendants’ counterclaims against the City with prejudice. The defendants appeal.
 

 Standard of Review
 

 In reviewing the disposition of a motion for a summary judgment, we apply the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact.
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). This Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412 (Ala.1990).
 

 Facts
 

 On November 5, 2002, a tornado struck the City, causing widespread and extensive damage. The tornado destroyed Peterson’s house, which was located on two contiguous lots at 374 Hickory Grove Road. Peterson’s daughter and his son-in-law, Ellis, resided in the house with him. Following the destruction of the house, Peterson, his daughter, and Ellis relied on friends for housing.
 

 In December 2002, Ellis purchased a double-wide mobile home to place on Peterson’s property. Section 91.3A2 of Art. IX of the City’s Code of Ordinances addresses mobile homes and provides:
 

 “The mobile unit shall be oriented with the long axis parallel to the street on which the lot fronts and in no case shall the unit be located within twenty (20) feet of any permanent type of building. The unit shall not be located closer than ten (10) feet of any lot line and must be a minimum of twenty-five (25) feet from the street.”
 

 At some point after Ellis purchased the mobile home, Patricia Jones, Peterson’s neighbor, contacted James Giganti, the city clerk, and informed him of the defendants’ intentions of placing a mobile home on the Peterson property. In his capacity as city clerk, Giganti was the individual with the authority to make decisions regarding the placement of mobile homes within the municipal limits of the City. Jones contacted Giganti a second time to inform him that the defendants had poured
 
 *41
 
 a concrete slab perpendicular to Hickory Grove Road and in close proximity to her property line. Giganti then attempted to contact the defendants by telephone to discuss the placement of the mobile home but was unsuccessful in doing so because the defendants were staying with friends. Giganti did not visit Peterson’s property at this time to investigate Jones’s complaint because he was in the “middle of everything else” in the aftermath of the tornado.
 

 Subsequently, on December 18, 2002, Jones contacted Giganti’s office a third time complaining about the placement of the mobile home on Peterson’s property. Giganti’s secretary, knowing a permit had not been issued for a mobile home in that location, sent a police officer to Peterson’s property to stop the installation of the mobile home. The defendants were told that they needed to contact the city clerk’s office. At the time the installation of the mobile home was stopped, the defendants had dug a septic tank and had installed field lines, had poured a concrete pad, and had installed half of the mobile home perpendicular to Hickory Grove Road and approximately six to eight feet from Jones’s property line. The defendants did not inquire into the applicable zoning requirements before beginning the installation of the mobile home and were unaware that a permit was required before a mobile home could be placed within the municipal limits of the City.
 

 The defendants contacted the city clerk’s office as requested and met with Giganti on December 18, 2002. Also present at this meeting was Rhett Taylor, a city councilman. During this meeting Giganti informed the defendants of the zoning requirements of § 91.3A2. Ellis represented to Giganti that the Peterson property was approximately 100 feet wide and that the mobile home they were installing was 80 feet long. Ellis told Gi-ganti that the debris from the destroyed house remained on the lots, in the location of the original house, i.e., in the center of the property; that a new septic tank and field lines were in place; and that there was no other way the mobile home could be positioned on the lot other than the way it was being positioned. Ellis further informed Giganti that the concrete pad and half of the mobile home had already been installed on the property. Giganti determined that based on the length of the mobile home and the width of the lot as represented to him by Ellis, the mobile home could not be positioned on the lot in a manner that complied with § 91.3A2 of the City’s Code of Ordinances. However, Giganti gave the defendants permission to complete the installation of the mobile home in the nonconforming position — perpendicular to Hickory Grove Road and approximately six to eight feet from Jones’s property line — because half of the mobile home had already been installed, the defendants were homeless and facing an emergency situation, and he did not believe, based on Ellis’s representations regarding the width of the property, that the mobile home could be positioned on the property in a manner that would comply with § 91.3A2. Ellis testified that if Giganti had not granted the defendants permission to complete the installation of the mobile home on the Peterson property, he would have returned it to the seller. Giganti testified in his deposition that he informed the defendants that the City would investigate the matter at a later date and that it would handle any problems that arise at that time. Ellis denied in his deposition that Giganti told him that the City would investigate the matter at a later date.
 

 Giganti’s subsequent investigation revealed the actual dimensions of the two contiguous lots and the mobile home. The mobile home measured 75 feet, 11 inches
 
 *42
 
 in length. The front of the two Peterson lots that border Hickory Grove Road had a combined width of 105 feet. The two lots are 210 feet deep and widen from front to back; the rear width of the combined lots is 154 feet.
 
 [2]
 
 The width of the lots at the approximate center from front to rear is 125 feet. The City determined that the Peterson property was of sufficient size to allow the mobile home to be placed on the property in a manner that would comply with § 91.3A2.
 
 [3]
 

 After the mobile home had been placed on the lots, the City was presented with a petition signed by surrounding property owners requesting that the City enforce § 91.3A2 of the Code of Ordinances. The City ordered the defendants to relocate the mobile home on the lot so that its placement would comply with § 91.3A2. The City offered to pay the expenses associated with relocating the mobile home, including moving the septic tank and the field lines. The defendants, however, refused to relocate the mobile home because, they said, their warranty on the mobile home would be voided if they moved it, they would lose their financing, and the move could potentially damage the mobile home.
 
 [4]
 
 Giganti testified that in the wake of the tornado the City continued to issue permits to its citizens but was not charging for the permits. He stated that the situation the defendants found themselves in could have been avoided if the defendants had applied for a permit before installing the mobile home.
 

 Analysis
 

 The defendants rely on
 
 City of Foley v. McLeod,
 
 709 So.2d 471 (Ala.1998), and argue that the City is estopped from enforcing § 91.3A2 because, they say, Giganti waived the enforcement of that ordinance by giving them permission to install the mobile home in a nonconforming position on the Peterson property.
 

 In
 
 McLeod,
 
 the City of Foley sought to enforce a zoning ordinance preventing the replacement of mobile homes in a nonconforming mobile-home park. The Green Acres mobile-home park had been in continuous operation since approximately 1955. Kenneth McLeod and Jackie McLeod purchased Green Acres in 1982 and had operated the mobile-home park since then. In 1967, the City of Foley adopted a zoning ordinance that placed the Green Acres mobile-home park into a single-family residential zone. In 1987, the City of Foley adopted a new zoning ordinance, which placed the Green Acres mobile-home park into a high-density single-family residential zone. Generally, the operation of a mobile-home park within a single-family residential area would have been prohibited by the zoning ordinances; however, the City of Foley had allowed the continued operation of the Green Acres mobile-home park as a preexisting nonconforming use.
 

 In 1994, the McLeods purchased six new mobile homes to replace existing rental units at the Green Acres mobile-home park. The McLeods placed the mobile homes on lots at Green Acres and prepared them for use as rental units. In August 1994, the City of Foley sent the McLeods a letter demanding that the new mobile homes be removed from the Green Acres mobile-home park within 10 days. The City of Foley contended that because
 
 *43
 
 the McLeods’ mobile-home park was a nonconforming use, their locating different or additional mobile homes at the Green Acres mobile-home park would violate the City of Foley’s zoning ordinance. The McLeods refused to remove the mobile homes, and the City of Foley sued, seeking injunctive and declaratory relief. The McLeods contended that the City of Foley should be estopped from complaining of the replacement of mobile homes at the Green Acres mobile-home park because the City of Foley had permitted similar replacements at various times since the enactment of the current zoning ordinance in 1987. The trial court entered a summary judgment in favor of the McLeods.
 

 This Court concluded that the zoning ordinance prohibited the replacement of the nonconforming mobile homes with new mobile homes. However, this Court went on to determine that the City of Foley was estopped from enforcing the zoning ordinance because of its prior acquiescence in the replacement of mobile homes at the Green Acres mobile-home park. This Court stated:
 

 “The McLeods contend that, even if the terms of the City [of Foley’s] zoning ordinance would prevent their replacing mobile homes at Green Acres, the City [of Foley] should be estopped from enforcing the ordinance because the City [of Foley] has allowed similar replacements at various times since the ordinance was adopted in 1987. To support this contention, the McLeods presented evidence to show that numerous mobile homes were moved into and out of Green Acres between 1987 and 1994. They also point out that the City [of Foley] presented no evidence indicating that it ever objected to the moving and replacing of mobile homes at Green Acres until August 1994. In further support of their estoppel argument, the McLeods stated, in their response to the City [of Foley’s] interrogatories, that they informed the City [of Foley’s] building inspector of their plan to purchase the six replacement mobile homes and that he expressed no objection to their plan. Again, the City [of Foley] presented no evidence to refute this statement.
 

 “In
 
 City of Prattville v. Joyner,
 
 661 So.2d 1158 (Ala.1995)(Joyner
 
 I),
 
 this Court affirmed an injunction estopping the City of Prattville from denying fire protection services to residents and businesses within its police jurisdiction. The Court recited these general principles regarding the application of the doctrine of estoppel against municipal corporations:
 

 “ ‘In
 
 Alford v. City of Gadsden,
 
 849 So.2d 1132 (Ala.1977), this Court explained that “[t]he doctrine of estoppel is rarely applied against a municipal corporation, but it may be applied in a proper case.”
 
 Id.
 
 at 1135, citing
 
 City of Montgomery v. Weldon,
 
 280 Ala. 463, 195 So.2d 110 (1967);
 
 Powell v. City of Birmingham,
 
 258 Ala. 159, 61 So.2d 11 (1952);
 
 Brown v. Tuskegee Light & Power Co.,
 
 232 Ala. 361, 168 So. 159 (1936). In
 
 City of Guntersville v. Alred,
 
 495 So.2d 566, 568 (Ala. 1986), this Court stated that “[t]he doctrine of estoppel may apply against a municipal corporation when justice and fair play demand it.” See also
 
 Alabama Farm Bureau Mutual Casualty Insurance Co. v. Board of Adjustment,
 
 470 So.2d 1234 (Ala.Civ.App.1985).’
 

 “Joyner I,
 
 661 So.2d at 1161-62.
 

 “This Court recently revisited the
 
 Joyner I
 
 decision in
 
 City of Prattville v. Joyner,
 
 698 So.2d 122 (Ala.1997)
 
 (Joyner II),
 
 and determined from the facts of that case that the City of Prattville
 
 *44
 
 should not have been estopped from denying fire protection services. However,
 
 Joyner II
 
 did not alter the general rule that, although estoppel is to be cautiously applied against a municipal corporation, it may nonetheless be applied when a municipality’s conduct, language, or silence amounts to a representation or concealment of a material fact. See
 
 Joyner II,
 
 698 So.2d at 126, quoting
 
 State Highway Dep’t v. Headrick Outdoor Advertising, Inc.,
 
 594 So.2d 1202, 1204-05 (Ala.1992).
 

 “Thus, although the doctrine of estop-pel is rarely applied against a municipal corporation, it may be applied in a proper case when justice and fair play demand it and where there has been a misrepresentation or concealment of material fact. In the present case, the evidence indicates that numerous mobile homes had been moved into and out of Green Acres over the years. Nonetheless, the City [of Foley] had declined to enforce the zoning ordinance against Green Acres after Green Acres became a nonconforming use in 1967. Even when the City [of Foley] objected in 1994, it objected only after the McLeods had already purchased the mobile homes and had prepared them for rental. Taken as a whole, these factors cause us to conclude that the City [of Foley’s] continued acquiescence amounted to a misrepresentation of a material fact, namely that it would not enforce the zoning ordinance to prevent the McLeods from replacing mobile homes at Green Acres. Moreover, it would be unjust and unfair at this point to allow the City [of Foley] to force the McLeods to remove the six mobile homes. Therefore, we hold that as to the installation of these six mobile homes the City [of Foley] is estopped from enforcing the zoning ordinance against the McLeods. On that basis, we affirm the summary judgment against the City [of Foley].”
 

 McLeod, 709
 
 So.2d at 474-75.
 

 As noted in
 
 McLeod,
 
 the doctrine of estoppel is rarely applied against a municipality; however, it may be applied “in a proper case when justice and fair play demand it and where there has been a misrepresentation or concealment of material fact.”
 
 McLeod,
 
 709 So.2d at 474. In this case, nothing in the record indicates that the City had historically acquiesced to nonconforming uses under or violations of § 91.3A2 by its citizens. Giganti informed the defendants of the applicability and requirements of § 91.3A2 during the meeting on December 18, 2002. Although Gi-ganti gave the defendants permission to complete the nonconforming installation of the mobile home on Peterson’s property, he did so in an effort to accommodate the defendants, who had been left homeless following the tornado, and only after the defendants — whether intentionally or inadvertently — had misled him as to the dimensions of the Peterson property and had installed a new septic tank, field lines, a concrete pad, and half of the double-wide mobile home. Accordingly, we conclude that the City is not estopped from enforcing § 91.3A2 because “justice and fair play” do not demand that the doctrine of estoppel be applied based on the facts of this case where there has been no “misrepresentation or concealment of material fact” by the City.
 
 McLeod,
 
 709 So.2d at 474.
 

 The defendants next contend that to require them to reposition the mobile home in a manner that complies with § 91.3A2 would work a substantial and unnecessary hardship. The defendants insist that they could lose their financing for the mobile home if they were to reposition it on the property and that it would be virtually impossible to reposition the double-wide mobile home without damaging it.
 

 
 *45
 
 It is undisputed that the mobile home as currently positioned on the Peterson property violates § 91.3A2 of Art. IX of the City’s Code of Ordinances. Section 153 of the City’s Code of Ordinances provides that the City may institute such action or proceedings necessary to correct or abate a violation of its ordinances. In
 
 Town of Orrville v. S & H Mobile Homes, Inc.,
 
 872 So.2d 856, 857 (Ala.Civ.App.2003), the Town of Orrville filed a complaint against S <& H Mobile Homes, Inc., and Lula Powell seeking to enforce the Town of Orr-ville’s zoning ordinance prohibiting the placement of mobile homes on property within the municipal limits of the Town of Orrville that is not specifically zoned for mobile-home use. The evidence indicated that S & H Mobile Homes and Powell were aware of the zoning ordinance and yet placed the mobile home on the particular property. S & H Mobile Homes and Powell requested a variance from the zoning ordinance after the Town of Orrville filed its complaint. The Town of Orrville’s board of adjustments voted unanimously to deny the variance. On appeal from the board’s decision, the circuit court entered a judgment in favor of S & H Mobile Homes and Powell, denying the Town of Orrville’s request to enjoin them from placing a mobile home on property within the municipal limits not specifically zoned for mobile-home use.
 

 In holding that S & H Mobile Homes and Powell were not entitled to a variance, the Court of Civil Appeals stated:
 

 “Alabama law is clear and our courts have repeatedly recognized that variances should be granted sparingly and only under unusual and exceptional circumstances where the literal enforcement of the ordinance would result in unnecessary hardship.
 
 Ex parte Chapman,
 
 485 So.2d 1161 (Ala.1986);
 
 see also Board of Zoning Adjustment ofFulton-dale v. Summers,
 
 814 So.2d 851 (Ala.2001);
 
 Ex parte Board of Zoning Adjustment of Mobile,
 
 636 So.2d 415 (Ala.1994);
 
 Board of Zoning Adjustment of Mobile v. Dauphin Upham Joint Venture,
 
 688 So.2d 823 (Ala.Civ.App.1996);
 
 Board of Adjustment of Gadsden v. VFW Post 8600,
 
 511 So.2d 216 (Ala.Civ. App.1987). ...
 

 [[Image here]]
 

 “... [T]he dispositive issue on appeal is whether the enforcement of the zoning ordinance and the subsequent denial of a variance resulted in an unnecessary hardship to the defendants. ‘ “[T]he unnecessary hardship which will suffice for the granting of a variance must relate to the land rather than to the owner [herself]. Mere personal hardship does not constitute sufficient ground for the granting of a variance.” ’
 
 Ex parte Chapman,
 
 485 So.2d at 1164 (quoting 82 Am.Jur.2d
 
 Zoning and Planning
 
 § 275 (1976)). Further, a ‘ “self-inflicted or self-created hardship may not be the basis for a variance or for a claim thereof.” ’
 
 Ex parte Chapman,
 
 485 So.2d at 1163 (quoting
 
 Thompson, Weinman & Co. v. Board of Adjustment,
 
 275 Ala. 278, 281, 154 So.2d 36, 39 (1963)).
 

 “It is undisputed that Powell knew of the zoning restriction before she purchased the mobile home. Nevertheless, Powell purchased the mobile home without first seeking and securing a variance. In her brief on appeal, Powell asserts that it would have been futile to apply for a variance in light of McHugh’s statement that the zoning ordinance prohibited the placement of the mobile home on the property. Regardless of the alleged futility in applying for a variance, Powell was aware of the zoning restriction but proceeded to place a mobile home on the property. Clearly, Powell created the hardship that she alleged existed, and, therefore, she may not be permitted to take advantage of it.
 
 *46
 

 See Ex parte Chapman, supra; see also City of Russellville Zoning Board of Adjustment v. Vernon,
 
 842 So.2d 627 (Ala.2002)(holding trial court erred by-granting variance from zoning restriction where appellee created hardship).”
 

 S & H Mobile Homes,
 
 872 So.2d at 858-61.
 

 It is undisputed that the defendants here installed a new septic tank, field lines, a concrete pad, and half of the double-wide mobile home without inquiring as to the applicable zoning requirements and without first obtaining a required permit from the City. Giganti testified that the present situation could have been avoided had the defendants inquired as to the applicable zoning requirements and sought a permit before beginning the installation of the mobile home. Further, Giganti’s permitting the defendants to complete installation of the mobile home was based in part on misrepresentations— whether intentional or inadvertent — by the defendants regarding the dimensions of Peterson’s property and in part on the fact that the mobile home had already been substantially installed. It is clear that the defendants created any hardship that may exist by not inquiring into the applicable zoning laws and obtaining the required permission from the City before beginning to install the mobile home. Therefore, the defendants cannot now rely on that alleged hardship in refusing to reposition the mobile home on Peterson’s property in a manner that would comply with § 91.3A2.
 

 The defendants next argue that the trial court erred in summarily dismissing their counterclaims against the City. Rule 28(a)(10), Ala. R.App. P., requires that an appellate brief contain “[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” A single citation to a general principle of law without specific relevance to the issue presented will not satisfy the minimum requirements of Rule 28(a)(10), Ala. R.App. P.
 
 Davis v. Sterne, Agee & Leach, Inc.,
 
 965 So.2d 1076 (Ala.2007). The defendants’ argument as to this issue consists of a half page and contains only a single citation to general authority relating
 
 to the
 
 summary-judgment standard of review. Accordingly, we conclude that the defendants’ argument as to this issue fails to comply with the requirements of Rule 28(a)(10). “[I]t is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.”
 
 State Farm Mut. Auto. Ins. Co. v. Motley,
 
 909 So.2d 806, 822 (Ala.2005).
 

 Conclusion
 

 The trial court’s summary judgment is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
 

 [1]
 

 . We note that an order denying a motion for a summary judgment is an interlocutory order that will not support an appeal unless certified for a permissive appeal pursuant to Rule 5, Ala. R.App. P. See
 
 Continental Cas. Co. v. SouthTrust Bank, N.A.,
 
 933 So.2d 337 (Ala.2006). The defendants did not seek certification under Rule 5, Ala. R.App. P.; therefore, the denial of their motion for a summary judgment is not before this Court on appeal.
 

 [2]
 

 . Peterson's son resided in a mobile home that was located at the rear of the two lots.
 

 [3]
 

 . The debris from the destroyed house was removed from the center of the property by the spring of 2003.
 

 [4]
 

 . The warranty on the mobile home has since expired.